740 F.2d 203
 NORTHEAST BANCORP, INC. and Union Trust Company,
Petitioners-Appellants,
v.
BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM,
Respondent-Appellee.
CITICORP, a Corporation, Petitioner,
v.
The BOARD OF GOVERNORS OF the FEDERAL RESERVE SYSTEM, Respondent.
 Nos. 1378 to 1380, Dockets 84-4047, 84-4051, 84-4053, 84-4081.
 United States Court of Appeals,
Second Circuit.
 Argued May 14, 1984.
Decided Aug. 1, 1984.
 
 1
 George D. Reycraft, New York City (Cadwalader, Wickersham & Taft, New York City, of counsel), for petitioners Northeast Bancorp, Inc. and Union Trust Co.
 
 
 2
 James W. Quinn, New York City (Weil, Gotshal & Manges, New York City, of counsel), for petitioner Citicorp.
 
 
 3
 James E. Scott, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Michael Bradfield, Gen. Counsel, Richard M. Ashton, Asst. General Counsel, Bd. of Governors of the Federal Reserve System, Washington, D.C., of counsel), for respondent Bd. of Governors of the Federal Reserve System.
 
 
 4
 (Bertram M. Kantor, Michael H. Byowitz, Wachtell, Lipton, Rosen & Katz, New York City, of counsel), for intervenor CBT Corp.
 
 
 5
 (Kenneth Laurence, Choate, Hall & Stewart, Boston, Mass., Prof. Laurence H. Tribe, Cambridge, Mass., of counsel), for intervenor Bank of New England Corp.
 
 
 6
 William Hughes Mulligan, New York City (Douglas M. Kraus, William J. Sweet, Jr., Lawrence J. Block, Margaret Enloe, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel), for intervenor Hartford Nat. Corp.
 
 
 7
 Jamie W. Katz, Asst. Atty. Gen., The Commonwealth of Massachusetts, Boston, Mass., Francis X. Bellotti, Atty. Gen., Boston, Mass., for intervenor Commonwealth of Massachusetts.
 
 
 8
 John G. Haines, Asst. Atty. Gen., Hartford, Conn. (Joseph I. Lieberman, Atty. Gen., Jane E. Comerford, Asst. Atty. Gen., Hartford, Conn., of counsel), for intervenor State of Connecticut and Brian J. Woolf, Banking Commissioner.
 
 
 9
 Stuart C. Stock, Washington, D.C. (Covington & Burling, Washington, D.C.), for intervenor Bank of Boston Corp.
 
 
 10
 Before CARDAMONE and PRATT, Circuit Judges, and BONSAL, District Judge.*
 
 BONSAL, District Judge:
 
 11
 Petitioners Citicorp ("Citicorp") and Northeast Bancorp, Inc. together with Northeast's subsidiary bank, Union Trust Company (collectively "Northeast"), petition this court to review three orders of the Board of Governors of the Federal Reserve System (the "Board") which, pursuant to Sections 3 and 4(c)(8) of the Bank Holding Company Act of 1956 (the "BHCA"), approved the applications of:
 
 
 12
 1) Bank of New England Corporation ("BNE"), a Massachusetts bank holding company, to acquire CBT Corporation ("CBT"), a Connecticut bank holding company;
 
 
 13
 2) Hartford National Corporation ("HNC"), a Connecticut bank holding company, to acquire Arltru Bankcorporation ("Arltru"), a Massachusetts bank holding company; and
 
 
 14
 3) Bank of Boston Corporation ("BBC"), a Massachusetts bank holding company, to acquire Colonial Bancorp, Inc. ("Colonial"), a Connecticut bank holding company.
 
 
 15
 In enacting the BHCA, Congress established a framework for the supervision and regulation of bank holding companies, i.e., companies that control one or more banks.[1] Section 3 of the BHCA prohibits any acquisition of a bank by a bank holding company without prior approval of the Board. Section 4 of the BHCA allows bank holding companies, through "non-bank" subsidiaries, to provide financial services which the Board deems to be "so closely related to banking or managing or controlling banks as to be a proper incident thereto." 12 U.S.C. Sec. 1843(c)(8).[2]
 
 
 16
 The BHCA, as originally passed by the House of Representatives, banned interstate acquisitions. See H.R.Rep. No. 609, 84th Cong., 1st Sess. 3, 15 (1955). The original version of the bill reported out by the Senate Committee contained no provision dealing with interstate acquisitions. See S.Rep. No. 1095, 84th Cong., 1st Sess. 10-11 (1955). However, Senator Douglas of Illinois proposed an amendment in the Senate which was adopted by both Houses as Section 3(d) of the BHCA (the Douglas Amendment). The Douglas Amendment provided that no application by a bank holding company to acquire a bank located in another state could be approved by the Board unless the state in which such bank was located had, by statute, specifically authorized such acquisition.[3]
 
 
 17
 Massachusetts, in 1982, and Connecticut, in 1983, enacted statutes (hereinafter referred to as the Massachusetts and Connecticut statutes, respectively) to permit interstate bank acquisitions. The Massachusetts statute authorized bank holding companies located in any other New England state to acquire banks located in Massachusetts, provided that the New England state in which such bank holding company was located had granted reciprocal privileges to bank holding companies located in Massachusetts. The Connecticut statute contained a similar provision.[4]
 
 
 18
 (1) THE BNE APPLICATION
 
 
 19
 On July 11, 1983 BNE entered into an agreement to acquire CBT under the authority of the Connecticut statute. On August 5, 1983, pursuant to Sections 3 and 4(c)(8) of the BHCA, BNE applied to the Board for approval of its proposed acquisition of CBT. By notice published in the Federal Register dated September 15, 1983, the Board invited comment on BNE's application.[5] Citicorp and Northeast opposed the application and asked the Board to defer action pending the outcome of litigation Northeast had instituted challenging the constitutionality of the Connecticut statute, which litigation was dismissed on December 16, 1983.[6] On March 26, 1984 the Board approved BNE's proposed acquisition of CBT pursuant to Sections 3 and 4(c)(8) of the BHCA.[7] The Board found that the acquisition came within the Douglas Amendment because it had been specifically authorized by the Connecticut statute. The Board found that "the Douglas Amendment should be read as a renunciation of federal interest in regulating the interstate acquisition of banks by bank holding companies." The Board also found no "clear and unequivocal" basis for finding the Connecticut statute unconstitutional.
 
 
 20
 (2) THE HNC APPLICATION
 
 
 21
 On September 1, 1983 HNC entered into an agreement to acquire Arltru under the authority of the Massachusetts statute. On October 19, 1983, pursuant to Section 3 of the BHCA, HNC applied to the Board for approval of its proposed acquisition of Arltru. By notice published in the Federal Register dated November 25, 1983, the Board invited comment.[8] By letter dated December 16, 1983 and attachments, Citicorp opposed HNC's application. On March 26, 1984 the Board approved HNC's proposed acquisition of Arltru pursuant to Section 3 of the BHCA.[9] The Board found that the acquisition came within the Douglas Amendment because it had been specifically authorized by the Massachusetts statute. The Board found that "the Douglas Amendment should be read as a renunciation of federal interest in regulating the interstate acquisition of banks by bank holding companies." The Board also found no "clear and unequivocal" basis for finding the Massachusetts statute unconstitutional.
 
 
 22
 (3) THE BBC APPLICATION
 
 
 23
 BBC entered into an agreement to acquire Colonial under the authority of the Connecticut statute, and pursuant to Sections 3 and 4(c)(8) of the BHCA BBC applied to the Board for approval of its proposed acquisition of Colonial. By notice published in the Federal Register dated February 16, 1984, the Board invited comment on BBC's application.[10] On March 8, 1984 Citicorp filed comments with the Board opposing the application. On May 18, 1984 the Board approved BBC's proposed acquisition of Colonial pursuant to Sections 3 and 4(c)(8) of the BHCA.[11] On the basis of the Board's findings with respect to the applications of BNE and HNC, the Board refused to find the Connecticut statute unconstitutional, and so approved BBC's application.
 
 
 24
 Pursuant to Section 9 of the BHCA, Citicorp and Northeast filed with this court petitions for review of the orders of the Board approving the BNE-CBT and HNC-Arltru acquisitions.[12] The petitions were consolidated and the acquisitions stayed pending review by this court of the orders of the Board. BNE, CBT, HNC, the State of Connecticut and the Commonwealth of Massachusetts were permitted to intervene. Thereafter, on May 25, 1984, pursuant to Fed.R.App.P. 15(d), BBC moved for leave to intervene, which motion was granted by this court on June 18, 1984. BBC also moved to consolidate for decision the petition for review filed in its action with the petitions pending before the court. This motion was also granted by this court on June 18, 1984.
 
 DISCUSSION
 
 25
 Petitioners Citicorp and Northeast contend that the Board erred in approving the applications of BNE, HNC, and BBC because the Massachusetts and Connecticut statutes, by limiting interstate acquisitions of Massachusetts and Connecticut banks to bank holding companies located in other New England states, impermissibly restrict interstate commerce in violation of the Commerce Clause. Petitioners argue that since the Massachusetts and Connecticut statutes violate the Commerce Clause, they are unconstitutional, and the Douglas Amendment did not permit the Board to approve the applications. Petitioners also contend that the Massachusetts and Connecticut statutes are part of an interstate understanding which violates the Compact Clause. They charge that by discriminating against non-New England bank holding companies, the statutes also violate the Equal Protection Clause.
 
 
 26
 The intervenors, on the other hand, contend that the Massachusetts and Connecticut statutes promote interstate commerce and do not violate the Commerce Clause. The intervenors argue that even if the statutes restrict interstate commerce, they do not violate the Commerce Clause since they were enacted under the authority of the Douglas Amendment. The intervenors say that the Massachusetts and Connecticut statutes do not represent an interstate agreement or compact in violation of the Compact Clause; and finally, the intervenors argue that the statutes do not violate the Equal Protection Clause.
 
 
 27
 The contentions of the parties make it necessary for us to first consider the origin and scope of the Douglas Amendment.
 
 THE DOUGLAS AMENDMENT
 
 28
 As previously stated, the BHCA, as originally passed by the House of Representatives, banned all interstate acquisitions. However, Senator Douglas of Illinois proposed the Douglas Amendment in the Senate and it was adopted by both Houses as Section 3(d) of the BHCA. The Douglas Amendment provided that no application by a bank holding company to acquire a bank located in another state could be approved by the Board unless the state in which such bank was located had specifically authorized such acquisition by statute.[13] In describing his proposed amendment, Senator Douglas stated:
 
 
 29
 What our amendment aims to do is to carry over into the field of holding companies the same provisions which already apply for branch banking under the McFadden Act--namely, our amendment will permit out-of-State holding companies to acquire banks in other States only to the degree that State laws expressly permit them .... 102 Cong.Rec. 6858 (1956).
 
 
 30
 At the time the Douglas Amendment was enacted, no state permitted interstate acquisitions by bank holding companies. Therefore, Senator Douglas observed that the immediate effect of the amendment would be "to bar the expansion of bank holding companies across State lines." 102 Cong.Rec. at 6860. "But," he added, "the amendment would leave the way open for States to make explicit provision for such purchases and acquisitions if they so decided." Id.
 
 
 31
 The Board, after reviewing its legislative history, found the Douglas Amendment to be a "renunciation of federal interest in regulating the interstate acquisitions of banks by bank holding companies." As recently pointed out by the Supreme Court in Securities Industry Association v. Board of Governors of the Federal Reserve System, --- U.S. ----, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984), "[t]he Board is the agency responsible for federal regulation of the national banking system, and its interpretation of a federal banking statute is entitled to substantial deference."
 
 
 32
 The Douglas Amendment prohibits the Board from approving applications by bank holding companies to acquire banks located in other states unless the state in which the bank is located has enacted a statute "specifically authorizing" such acquisitions. The Massachusetts and Connecticut statutes specifically authorize acquisitions of Massachusetts and Connecticut banks by bank holding companies located in other New England states. Without these statutes no out-of-state bank holding companies could acquire Massachusetts or Connecticut banks. Therefore, in permitting interstate acquisitions (albeit limited to New England), the Massachusetts and Connecticut statutes would appear to promote interstate commerce rather than restrict it.
 
 
 33
 We have considered the argument that the Massachusetts and Connecticut statutes, to avoid conflicting with federal law, must either permit all bank holding companies throughout the United States to acquire their banks or permit none. However, we find nothing in the language or history of the Douglas Amendment which supports this contention. See Iowa Independent Bankers v. Board of Governors of the Federal Reserve System, 511 F.2d 1288, 1296-97 (D.C.Cir.), cert. denied, 423 U.S. 875, 96 S.Ct. 144, 46 L.Ed.2d 106 (1975). Indeed, Section 7 of the BHCA reserves to the states the power and jurisdiction they possessed before the BHCA was enacted.[14]
 
 COMMERCE CLAUSE
 
 34
 The commerce Clause grants to Congress the power "[t]o regulate Commerce ... among the several States ...." U.S. Const., Art. I, Sec. 8, cl. 3. Congress, of course, may regulate commerce among the states as it sees fit. Western & Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 652, 101 S.Ct. 2070, 2074, 68 L.Ed.2d 514 (1981); Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 434, 66 S.Ct. 1142, 1157, 90 L.Ed. 1342 (1946). The Commerce Clause has been interpreted to limit the power of the states to interfere with or impose burdens on interstate commerce. Western & Southern Life Insurance Co., 451 U.S. at 652, 101 S.Ct. at 2074; Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 35-36, 100 S.Ct. 2009, 2014-2015, 64 L.Ed.2d 702 (1980); Great Atlantic & Pacific Tea Co. v. Cottrell, 424 U.S. 366, 370-71, 96 S.Ct. 923, 927-928, 47 L.Ed.2d 55 (1976). However, if Congress authorizes the states to regulate some aspect of interstate commerce, any action taken by a state within that authority is "invulnerable" to challenge. Western & Southern Life Insurance Co., 451 U.S. at 652-53, 101 S.Ct. at 2074-2075. Moreover, Congress may authorize the states to enact statutes which may interfere with interstate commerce. Such statutes do not violate the Commerce Clause. White v. Massachusetts Council of Construction Employers, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983). However, congressional authorization must be clear. South Central Timber Development, Inc. v. Wunnicke, --- U.S. ----, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984); White, 460 U.S. at 213, 103 S.Ct. at 1047 (1983); Western & Southern Life Insurance Co., 451 U.S. at 653-54, 101 S.Ct. at 2075-2076. We believe that, by enacting the Douglas Amendment, Congress authorized Massachusetts and Connecticut to enact the statutes challenged here.
 
 
 35
 For the reasons above stated, we conclude that the Massachusetts and Connecticut statutes do not violate the Commerce Clause. Therefore, the Board, in approving the acquisitions, properly concluded that there was no such violation.
 
 COMPACT CLAUSE
 
 36
 The Compact Clause of the Constitution provides that "[n]o State shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State, or with a foreign Power...." U.S. Const., Art. I, Sec. 10, cl. 3.
 
 
 37
 Petitioners contend that the Board's approval of the BNE-CBT, HNC-Arltru, and BBC-Colonial acquisitions should be reversed because the Massachusetts and Connecticut statutes which authorized them were enacted pursuant to an interstate compact to establish a regional banking system in the New England area. Such a compact, say petitioners, violates the Compact Clause.
 
 
 38
 In addition to the statutes enacted by Massachusetts and Connecticut, Rhode Island has enacted a statute which also limits acquisition of its banks to bank holding companies located in other New England states. However, the Rhode Island limitation will expire two years after the statute's effective date of July 1, 1984. Maine, by statute, permits the acquisition of Maine banks by out-of-state bank holding companies without limitation.[15] Vermont and New Hampshire do not have bank holding company statutes.
 
 
 39
 In view of the similarities in the Massachusetts and Connecticut statutes and the limitation to New England bank holding companies, the statutes could be considered as part of a plan or compact to create a regional banking system. Indeed, after considering the legislative history of the Massachusetts and Connecticut statutes and the fact that they were enacted within a six-month period, the Board found that the statutes indicated a plan to create a regional banking system in New England. However, such a plan, even if treated as a compact, would only violate the Compact Clause if it were a "combination tending to the increase of political power in the States, which may encroach upon or interfere with the supremacy of the United States." United States Steel Corp. v. Multistate Tax Commission, 434 U.S. 452, 471, 98 S.Ct. 799, 812, 54 L.Ed.2d 682 (1978) (quoting Virginia v. Tennessee, 148 U.D. 503, 519 (1893) ); New Hampshire v. Maine, 426 U.S. 363, 369, 96 S.Ct. 2113, 2117, 48 L.Ed.2d 701 (1976).
 
 
 40
 As a practical matter, we do not think that a New England bank holding company system would in any way increase the political power of the New England states or encroach upon or interfere with the just supremacy of the United States. However, if at any time Congress should find any encroachment, it could remove the encroachment by appropriate legislation.
 
 EQUAL PROTECTION CLAUSE
 
 41
 Petitioners argued before the Board that the Massachusetts and Connecticut statutes were unconstitutional in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., Amend. XIV, Sec. 1. Petitioners contend that by only allowing New England bank holding companies to acquire Massachusetts and Connecticut banks, the Massachusetts and Connecticut statutes discriminate against non-New England bank holding companies in violation of the Equal Protection Clause.
 
 
 42
 This type of legislation violates the Equal Protection Clause only if "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." Barry v. Barchi, 443 U.S. 55, 67, 99 S.Ct. 2642, 2650, 61 L.Ed.2d 365 (1979) (quoting Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979) ). We do not believe that the Massachusetts and Connecticut statutes evidence such irrationality. Rather, because "banking and related financial activities are of profound local concern," Lewis, 447 U.S. at 38, 100 S.Ct. at 2016, the Massachusetts and Connecticut statutes appear to be designed to foster banking and related activities in those states and in neighboring New England states. Massachusetts and Connecticut may be concerned that their banks could be dominated by large bank holding companies located in New York or Chicago if such holding companies were allowed to acquire their banks.[16] Therefore, we find no violation of the Equal Protection clause. See generally Iowa Independent Bankers, 511 F.2d at 1294-96.
 
 
 43
 In view of the foregoing, we affirm the orders of the Board approving the applications of BNE, HNC, and BBC.
 
 
 44
 AFFIRMED.
 
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 12 U.S.C. Sec. 1841(c) defines a "bank," in relevant part, as an "institution ... which (1) accepts deposits that the depositor has a legal right to withdraw on demand, and (2) engages in the business of making commercial loans."
 
 
 [2]
 Bank holding companies are generally prohibited from owning stock in companies other than banks
 
 
 [3]
 Section 3(d) of the BHCA, 12 U.S.C. Sec. 1842(d) (the Douglas Amendment) provides:
 Limitation by State boundaries. Notwithstanding any other provision of this section, no application (except an application filed as a result of a transaction authorized under section 13(f) of the Federal Deposit Insurance Act [12 U.S.C. Sec. 1823(f) ] shall be approved under this section which will permit any bank holding company or any subsidiary thereof to acquire, directly or indirectly, any voting shares of, interest in, or all or substantially all of the assets of any additional bank located outside of the State in which the operations of such bank holding company's banking subsidiaries are principally conducted on July 1, 1966, or the date on which such company became a bank holding company, whichever is later, unless the acquisition of such shares or assets of a State bank by an out-of-State bank holding company is specifically authorized by the statute laws of the State in which such bank is located, by language to that effect and not merely by implication. For the purposes of this section, the State in which the operations of a bank holding company's subsidiaries are principally conducted is that State in which total deposits of all such banking subsidiaries are largest. (Emphasis added.)
 
 
 [4]
 Mass.Gen.Laws Ann. ch. 167A, Sec. 2 (West Supp. 1982); 1983 Conn. Act 83-411 (Reg. Sess.). Rhode Island has enacted a similar statute, effective July 1, 1984, which is limited to New England acquisitions for two years after its effective date. R.I.Gen.Laws Secs. 19-30-1, 19-30-2 (1984)
 
 
 [5]
 Application Notice, 48 Fed. Reg. 41,524 (1983)
 
 
 [6]
 On July 29, 1983 Northeast filed an action in the U.S. District Court in Connecticut against the Connecticut Banking Commissioner. On December 16, 1983 Northeast's complaint was dismissed on the ground that Northeast lacked standing to challenge the constitutionality of the Connecticut statute. Northeast Bancorp, Inc. v. Woolf, 576 F.Supp. 1225 (D.Conn.1983), aff'd mem., 742 F.2d 1439 (2d Cir. 1984)
 
 
 [7]
 Bank of New England Corporation, 70 Fed.Res.Bull. 374 (1984)
 
 
 [8]
 Application Notice, 48 Fed.Reg. 53,172 (1983)
 
 
 [9]
 Hartford National Corporation, 70 Fed.Res.Bull. 353 (1984)
 
 
 [10]
 Application Notice, 49 Fed.Reg. 6012 (1984)
 
 
 [11]
 Bank of Boston Corporation, 70 Fed.Res.Bull. 524 (1984)
 
 
 [12]
 Section 9 of the BHCA (12 U.S.C. Sec. 1848) provides that any party aggrieved by an order of the Board may petition for a review of the order in the United States Court of Appeals and that the Court shall have jurisdiction to affirm, set aside, or modify the Board's order
 
 
 [13]
 Section 3(a) of the BHCA allows the Board to approve the acquisition of both banks and bank holding companies
 
 
 [14]
 Section 7 of the BHCA (12 U.S.C. Sec. 1846) provides:
 Reservation of rights to States. The enactment by the Congress of this chapter shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof.
 
 
 [15]
 Me.Pub.Law 1983, ch. 302, Sec. 2, as amended (1984)
 
 
 [16]
 According to statistics published by the Association of Bank Holding Companies, each of the four largest New York bank holding companies has greater assets than those of all the New England bank holding companies combined. Association of Bank Holding Companies, Bank Holding Company Facts (Spring 1983 ed.)