**Michael BISZKO, Jr., et al.,
Plaintiffs, Appellants,**

v.

**RIHT FINANCIAL CORPORATION, et al., Defendants, Appellees.**

No. 84–1579.

United States Court of Appeals,
First Circuit.

Argued Nov. 7, 1984.

Decided March 27, 1985.

As Amended April 2, 1985.

William A. Harvey, Philadelphia, Pa., with whom Edward S. Ellers, Rona J. Rosen, Fellheimer, Eichen & Goodman, Philadelphia, Pa., Milton Stanzler, and Abedon, Michaelson, Stanzler & Biener, Providence, R.I., were on brief, for plaintiffs, appellants.

David B. Tulchin, New York City, with whom Theodore O. Rogers, Jr., Sullivan & Cromwell, Washington, D.C., Joseph V. Cavanagh, Jeffrey C. Schreck, and Edwards & Angell, Providence, R.I., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, McGOWAN,[*] Senior Circuit Judge, and BOWNES, Circuit Judge.

McGOWAN, Senior Circuit Judge.

Appellants, certain shareholders of the Rhode Island Hospital Trust Corporation (RIHT), appeal an order[1] by the United States District Court for the District of Rhode Island dismissing their suit against RIHT and certain of its officers, which was brought to enjoin the acquisition of RIHT by the Bank of Boston Corporation (Bank of Boston). Appellants' complaint alleged that the Rhode Island statute permitting the acquisition violates several clauses of the United States Constitution. In addition to their federal-law claims, appellants raised state-law claims of breach of fiduciary duty by the officers and directors of RIHT. The district court ruled[2] that appellants lack standing to attack the constitutionality of the Rhode Island statute. The court further found that it had no independent jurisdictional basis for entertaining the state-law claims. Appellants challenge the court's ruling on standing. For the reasons hereinafter appearing, the judgment of the district court is affirmed.

Section 1842(d) of the federal Bank Holding Company Act, 12 U.S.C. §§ 1841–1850 (1982), prohibits a bank holding company from purchasing any stock or assets of any bank outside the state in which the operations of the bank holding company's banking subsidiaries are principally conducted, "unless the acquisition of such shares or assets of a State bank by an out-of-state bank holding company is specifically authorized by the statute laws of the State in which such bank is located." In May 1983, the Rhode Island legislature enacted a statute phasing in that authorization, in two stages. Beginning July 1, 1984, Rhode Island banks and bank holding companies could be acquired by banks or bank holding companies located in any New England state (defined as Maine, Connecticut, Ver-

---

[*] Of the District of Columbia Circuit, sitting by designation.

1. Order and Judgment (D.R.I. June 18, 1984).

2. 102 F.R.D. 538 (D.R.I.1984).

mont, New Hampshire, and Massachusetts), provided that state reciprocally authorizes acquisition of its own banks and bank holding companies by Rhode Island banking institutions. After July 1, 1986, the opportunity to acquire Rhode Island banks and bank holding companies is extended to banking institutions located in all other states meeting the reciprocity requirement. *See* R.I.Gen.Laws §§ 19–30–1, –2 (1984).

Massachusetts is one of three other New England states to authorize acquisitions of its banks and bank holding companies by out-of-state banking institutions.[3] In December 1983, Bank of Boston, a Massachusetts bank holding company, reached a proposed agreement with RIHT, a Rhode Island bank holding company, to acquire all of RIHT's outstanding common stock in exchange for a combination of cash and Bank of Boston preferred stock together worth $59 per share of RIHT common stock. The acquisition was ratified by a majority of RIHT's shareholders, at their annual meeting in May of 1984.

Several months earlier, the appellants, Michael Biszko and the David Bolger Revocable Trust, both RIHT shareholders, had filed suit in federal district court to enjoin the acquisition as proceeding under an unconstitutional statute. They alleged that, because of its provisions limiting the class of permissible acquirors to New England banking institutions for two years, the Rhode Island statute violates the compact, commerce, supremacy, equal protection, and due process clauses of the United States Constitution. The issue before us is whether appellants have standing to petition a federal court for a judgment declaring the Rhode Island statute unconstitutional.

◼ The constitutional aspect of the doctrine of standing requires appellants to show they have suffered a distinct and palpable injury that is fairly traceable to the statutory enactment in question and that can be redressed by the relief sought. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38–42, 96 S.Ct. 1917, 1924–1926, 48 L.Ed.2d 450 (1976); *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 424 (1st Cir.1983). The gravamen of the appellants' federal claim is the assertion that the geographic restriction on potential acquirors "necessarily" served to insulate Bank of Boston from competition in the purchasing of RIHT, thereby "affecting and limiting the price to be paid" to RIHT's shareholders by Bank of Boston. Appellants' Appendix at 11a [hereinafter cited as App.]. In support of this assertion, appellants proffered before the district court affidavits submitted by two officers of a New York bank in a different proceeding, brought by the New York bank to challenge the Massachusetts counterpart to Rhode Island's regionally restrictive bank acquisition law. In particular, appellants drew the district court's attention to statements in both affidavits that the New York bank is interested in acquiring banks in Connecticut and Massachusetts and to a statement in one of the affidavits that " 'some New England bankers believe that, absent the regional restriction provision the shareholders of Massachusetts banks would have more and better offers for their stock.' " At 541–542 (quoting Affidavit of Clarke Coggeshall, *Citicorp v. The Massachusetts Board of Bank Incorporation*, No. 83–3841C (D.Mass. filed Dec. 7, 1983)).

As the district court noted, "[w]hile plaintiffs are not required to prove their case at this point, broad allegations of speculative injury will not suffice. Where the injury and its cause are not obvious, the

---

**3.** *See* Mass.Gen.Laws Ann. ch. 167A, § 2 (West Supp.1982). The Massachusetts provision, as well as that of Connecticut, *see* 1983 Conn.Acts 411, *reprinted in* Conn.Gen.Stat.Ann. (West App. Pamphlet 1984), differs from Rhode Island's in that the class of permissible acquirors is permanently limited to New England banking institutions. Maine's statute, *see* Me.Rev.Stat.Ann. tit. 9–B, § 1013(2) (1983), contains a reciprocity requirement but no geographic limitation.

plaintiffs must plead their existence in their complaint with a fair degree of specificity." *Id.* at 541 (citing *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Munoz-Mendoza,* 711 F.2d at 425). *Accord, Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 44, 96 S.Ct. 1917, 1927, 48 L.Ed.2d 450 (1976). As the court found:

> Plaintiffs present no evidence of a non-New England institution interested in acquisition of RIHT Co., nor of intent on the part of such a company to expand into Rhode Island. They present no empirical evidence of the value of RIHT Co.'s stock, with or without the enactment of R.I.Gen.Laws Section 19–30–1 and 19–30–2.

At 542. Nonetheless, the district court found that, considered in the light most favorable to appellants, the averments in the affidavits

> can give rise to the inference that a non-New England institution is interested in acquiring companies in Rhode Island as well as in Massachusetts and Connecticut, because of the states' proximity to one another and business relationships that transcend physical boundaries. It might also follow that, as speculated upon by Mr. Coggeshall, a larger pool of potential acquirors would increase the value of RIHT Co.'s stock.

At 542.

■ The district court, it is clear, gave appellants every benefit of the doubt. The complaint's lack of any reference to a potential non-New England bank acquiror is troubling in itself, but it becomes especially problematic once viewed in light of the fact that non-New England banks have not hesitated to come forward themselves with legal challenges to state laws posing obstacles to their acquisition of New England banks. *See, e.g., Northeast Bancorp, Inc. v. Board of Governors,* 740 F.2d 203 (2d Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 776, 83 L.Ed.2d 772 (1985); *Citicorp v. The Massachusetts Board of Bank Incorporation, supra.* Moreover, it is entirely speculative whether the managers of

RIHT would have been receptive to another offer, either from a non-New England bank or another New England bank. Appellants, it would seem, thus "rely on little more than the remote possibility ... that their situation might have been better," *Warth,* 422 U.S. at 507, 95 S.Ct. at 2209, had the Rhode Island statute not contained the two-year head start provision for New England banks.

But even assuming appellants have sufficiently pleaded the claim that they received a lower price for their shares than they would have absent the Rhode Island statute's regional restriction, they have failed to demonstrate that the alleged lost opportunity to profit is an injury this court could remedy by finding the statute unconstitutional. For if we were to strike down the statute, as appellants' complaint requested, *see* App. at 15a, we would completely foreclose, rather than widen, the opportunity for interstate acquisitions of Rhode Island banking institutions. As the district court noted, one of the affidavits that appellants rely on states that "'the stock prices of many Massachusetts, Connecticut and Rhode Island bank holding companies have increased substantially since the enactment of the Massachusetts, Connecticut and Rhode Island Acts, in anticipation of [acquisitions]'" by New England banking institutions. At 541 (citing Coggeshall affidavit at 12). This proposition accords with appellants' theory that the larger the pool of potential bidders for a bank, the higher will be the value of the bank's stock. Striking down the Rhode Island statute and thereby constricting the market for RIHT thus will, on appellants' own theory and following their own choice of phrasing, "necessarily" lower the value of RIHT stock from the $59 level that the market achieved when New England banks were permitted to bid.

Undaunted by this seemingly inexorable logic, however, appellants contend that in fact their injury *would* be redressed by the nullification of the statute in its entirety. In oral argument, appellants' counsel stressed that, although striking down the statute might cause a temporary decline in

the value of their stock, the Rhode Island legislature would soon be moved, *sua sponte* or by the persuasive efforts of non-New England banks, to pass a statute permitting full interstate acquisitions of Rhode Island banks. Such a statute would promise the highest realizable value for RIHT stock. We are, however, unpersuaded by this line of argument. The "injury" that appellants suggest they have suffered is no more than the preclusion of a benefit that they might gain were the Rhode Island legislature to react in a certain way to a decision by this court. Such injury is not merely speculative—it is positively chimerical.

Taking a different tack, appellants cite the Supreme Court's decision in *Heckler v. Mathews*, —— U.S. ——, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), for the proposition that they are not deprived of standing simply because a successful challenge to the statutory scheme herein would result in the total elimination of interstate acquisitions of Rhode Island banking institutions and would thereby fail to improve appellants' position. Appellants' reliance on *Heckler* is misplaced. It is true, as the *Heckler* Court stated, that "when the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of *equal* treatment, a result that can be accomplished by withdrawal of benefits from the favored class." 104 S.Ct. at 1395 (quoting *Iowa-Des Moines National Bank v. Bennett*, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931)). But as the Court explained, withdrawal of benefits is permissible precisely because

> discrimination itself, by perpetuating "archaic and stereotypic notions" or by stigmatizing members of the disfavored group as "innately inferior" and therefore as less worthy participants in the political community, *Mississippi University for Women v. Hogan*, 458 U.S. 718, 725 [102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090] (1982), can cause serious non-economic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group.

*Id.* *Heckler* thus clearly does not dispense with the injury requirement. It simply emphasizes that the injury caused by a statute that confers benefits discriminatorily may not be limited to economic harm. In the instant case, however, appellants have alleged no such non-economic harms, nor could they plausibly do so. Appellants simply are not themselves members of any "excluded class"; only non-New England banks would arguably fall into that category.

Appellants urge, as an alternative to striking down the Rhode Island statute as a whole, that the court simply strike out the statute's offending regional restriction. The statute would thus be rewritten to permit full interstate bank acquisitions in Rhode Island (subject, of course, to the reciprocity requirement), commencing either immediately or in July of 1986. Both results would eliminate the limited, New-England-acquirors-only market of which appellant complains, without eliminating the interstate market for RIHT entirely.

■ The district court considered and rejected this argument. As the court noted, the Rhode Island legislature included a non-severability clause in the statute. The clause calls for the automatic repeal of all but one section of the statute if any provision of the statute is found unconstitutional. The section that is exempted concerns credit unions, and is irrelevant to the instant dispute. Although, as the district court correctly noted, a non-severability clause cannot ultimately bind a court, it establishes a presumption of non-severability. *See Immigration & Naturalization Service v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 2774, 77 L.Ed.2d 317 (1983); *Consumer Energy Council of America v. Federal Energy Regulatory Commission*, 673 F.2d 425, 441 (D.C.Cir.1982), *aff'd mem. sub nom. Process Gas Consumers Group v. Consumers Energy Council of America*, —— U.S. ——, 103 S.Ct. 3556, 77 L.Ed.2d 1402 (1983). That presumption, moreover, is buttressed by a common-sense reading of the statute. As the district court stated:

Although it is true, as plaintiffs argue, that the legislature envisioned interstate banking with no geographical restrictions at the end of a two-year period, it desired to reach this end through a two-step process. Whatever its motives, and they need not be questioned at this stage of the proceedings, the legislature considered the regional restrictions to be the core of the statute. Rhode Island's statutory scheme was adopted after legislative changes in Maine, Massachusetts and Connecticut. As a reciprocal type of legislation, it must be presumed that the Rhode Island legislature had the prior New England states' statutes in mind when it adopted its plan which represents a course somewhat between that chosen by Maine and that chosen by Massachusetts and Connecticut. Removal of the provisions would completely change the operation of the statutory scheme. It would quite clearly change its substantive reach. The court cannot thwart the intent of the legislature. The legislature had a plan in mind when it enacted the law; this plan cannot be overlooked by the court.

At 544.

The district court's analysis seems to us correct. Severing the regional restrictions from the statute would clearly do violence to the fundamental legislative scheme, and is therefore a remedy that is unavailable to appellants. *See Califano v. Westcott,* 443 U.S. 76, 91, 99 S.Ct. 2655, 2664, 61 L.Ed.2d 382 (1979); *Sloan v. Lemon,* 413 U.S. 825, 834, 93 S.Ct. 2982, 2987, 37 L.Ed.2d 939 (1973); *United States v. Jackson,* 390 U.S. 570, 585, 88 S.Ct. 1209, 1218, 20 L.Ed.2d 138 (1968); *McCorkle v. United States,* 559 F.2d 1258, 1261 (4th Cir.1977), *cert. denied,* 434 U.S. 1011, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978).

We hold that the Rhode Island statute has not caused appellants any injury that is remediable by a federal court and thus that appellants lack standing to challenge the constitutionality of the statute. We need not reach the issue, raised by appellees, of whether the Federal Reserve Board is the exclusive forum in which to lodge such challenges. The judgment of the district court is

Affirmed.