For these reasons, I dissent from the denial of review en banc.

**SEA SHORE CORPORATION d/b/a Canterbury Liquors & Pantry and Whitehall Co., Limited, Plaintiffs, Appellees,**

v.

**Walter J. SULLIVAN, Jr., Suzanne Ianella and Frederick W. Riley and individually and in their Representative and official capacity as members of the Massachusetts Alcoholic Beverages Control Commission, Defendants, Appellees,**

**Massachusetts Wholesalers of Malt Beverages, Inc., Intervenor, Appellant.**

**No. 98–1317.**

United States Court of Appeals, First Circuit.

Heard Sept. 9, 1998.

Decided Oct. 20, 1998.

H. Glenn Alberich with whom Thomas Fenerty, Eileen M. Fava, Molly S. Boast, and LeBoeuf, Lamb, Greene & MacRae, L.L.P., were on brief for intervenor, appellant.

Gerald J. Caruso, with whom Ferriter, Scobbo, Caruso, & Rodophele, P.C., Alan L. Kovacs, and Bass, Doherty & Kovacs, were on brief for plaintiff, appellee Sea Shore Corp.

Robert S. Frank, Jr., with whom Robert M. Buchanan, Jr., Joshua A. Engel, and Choate, Hall & Stewart, were on brief for plaintiff, appellee Whitehall Co., Ltd.

Robert D. Paul, J. Mark Gidley, and White & Case LLP on brief for The Stop & Shop Companies, Inc., amicus curiae.

Thomas R. Kiley, Steven H. Goldberg, and Cosgrove, Eisenberg & Kiley, P.C. on brief for Massachusetts Food Association, amicus curiae.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

The Massachusetts Wholesalers of Malt Beverages, Inc. (the "MWMBI"), a defendant-intervenor below, has filed a notice of appeal from the district court's ruling that Massachusetts regulations requiring price posting in the sale of alcoholic beverages violate the Sherman Act, 15 U.S.C. § 1. Because the state defendants in the action below did not appeal, there is a threshold question whether the MWMBI has independent standing to maintain this appeal. Because the MWMBI does not meet standing requirements, we dismiss for lack of appellate jurisdiction.

## I. *Background*

On August 23, 1994, plaintiff Sea Shore Corporation d/b/a Canterbury Liquors & Pantry, a retailer of alcoholic beverages,[1] brought an official-capacity action against members of the Massachusetts Alcoholic Beverages Control Commission (the "Commission"), the state body charged with the enforcement of liquor pricing laws. Whitehall Company, Limited, a wholesaler of alcoholic beverages, intervened as a plaintiff, and the MWMBI, a trade association of beer wholesalers, intervened as a defendant. Plaintiffs sought: (1) a declaration that certain provisions of Mass. Gen. Laws ch. 138, § 25A and related regulations, Mass. Regs. Code tit. 204, §§ 6.01–6.07 (collectively, the "Price Posting Laws"), are a *per se* violation of the Sherman Act and are not shielded from invalidation by the state action doctrine; and (2) orders permanently enjoining the Commission from enforcing the Price Posting Laws.

Plaintiffs did not challenge the first subparagraph of Mass. Gen. Laws ch. 138, § 25A, which prohibits price discrimination

---

1. Four other retailers were originally plaintiffs but dismissed their claims voluntarily.

in the sale of alcoholic beverages (the "Price Discrimination Law").[2] Rather, they contested only the provisions of the statute and regulations that provide for a "post and hold" scheme of pricing. Under the challenged provisions, Massachusetts wholesalers must post all prices that they will charge for the following month. *See* Mass. Gen. Laws ch. 138, § 25A; Mass. Regs. Code tit. 204, § 6.03(3). For ten days after the initial posting, wholesalers are permitted to amend the price on a specific brand product to meet, but not beat, the lowest posted price for that product. *See* Mass. Regs.Code tit. 204, § 6.05(1). They cannot otherwise raise or lower prices during the month in question. *See id.*

On July 19, 1996, plaintiffs filed motions for summary judgment, and defendants filed cross-motions for partial summary judgment. On February 3, 1998, the district court granted plaintiffs' motions for summary judgment and denied defendants' motions. The district court concluded that the Price Posting Laws are a state hybrid restraint constituting a *per se* violation of the Sherman Act, 15 U.S.C. § 1, and that these laws are not saved by the state action defense. The court therefore found that the Sherman Act preempted the Price Posting Laws, pursuant to the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI.

Following this ruling, the Commission informed the district court that it would not appeal and would comply voluntarily with the court's decision. The MWMBI, however, filed a notice of appeal on March 27, 1998. On April 27, 1998, plaintiffs moved to dismiss the MWMBI's appeal for lack of standing to press the appeal. We deferred ruling on the motion until after oral argument.

■ If a party lacks standing, we have no jurisdiction to decide the merits of the case. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 475–76, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Therefore, we first examine whether the MWMBI has standing to appeal the district court's grant of summary judgment.

## II. *The Article III Requirements for Standing*

■ The burden of stating facts sufficient to support standing rests with the party seeking to assert federal jurisdiction. *See Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). This burden applies to a party seeking to assert federal jurisdiction on appeal. *See Diamond v. Charles,* 476 U.S. 54, 68, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (involving intervenor appellant); *United States v. AVX Corp.,* 962 F.2d 108, 114 (1st Cir.1992) (same).

■ In addressing plaintiffs' motions to dismiss for lack of jurisdiction, we accept as true all material allegations of the MWMBI. *See AVX,* 962 F.2d at 114. We need not, however, credit "bald assertions," "subjective characterizations, optimistic predictions, or problematic suppositions." *Id.* at 115 (citations and internal quotation marks omitted). " '[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." *Id.* (quoting *Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989)). Moreover, we require heightened specificity

---

2. The full text of the statute reads:

No licensee authorized under this chapter to sell alcoholic beverages to wholesalers or retailers shall—

(a) Discriminate, directly or indirectly, in price, in discounts for time of payment or in discounts on quantity of merchandise sold, between one wholesaler and another wholesaler, or between one retailer and another retailer purchasing alcoholic beverages bearing the same brand or trade name and of like age and quality;

(b) [There is no clause (b).]

All price lists or price quotations made to a licensee by a wholesaler shall remain in effect for at least thirty days after the establishment of such price list or quotation. Any sale by a wholesaler of any alcoholic beverages at prices lower than the price reflected in such price list or quotation within such thirty day period shall constitute price discrimination under this section.

from an intervenor seeking to establish appellate standing.[3] *See AVX,* 962 F.2d at 115.

■ As an intervenor seeking singlehandedly to appeal a judgment, the MWMBI must independently pass the test of Article III standing. *See Diamond,* 476 U.S. at 68, 106 S.Ct. 1697 ("[A]n intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III."); *AVX,* 962 F.2d at 113. We cannot assume standing to appeal merely because the party was appropriately permitted to intervene in the proceeding below. *See AVX,* 962 F.2d at 112 (noting that when the original state defendant does not appeal, the intervenor can no longer "ride the state's coattails" and "derive the benefit of the state's standing"). Thus, we review the constitutional requirements for standing.[4]

■ We start with the basics. The MWMBI must demonstrate: (1) an "injury-in-fact"; (2) that is "fairly traceable" to the proceeding below; and (3) is "likely" to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Although these concepts are "concededly not susceptible of precise definition," case law has provided substantial guidance. *Allen,* 468 U.S. at 751, 104 S.Ct. 3315. Most importantly, "injury-in-fact" must involve "an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife,* 504 U.S. at 560, 112

S.Ct. 2130 (citations and internal quotation marks omitted).

■ Because the MWMBI is alleging injury to its constituent members rather than to itself as an organization, additional considerations are also relevant. An association may assert standing on behalf of its members if: (1) at least one of its members possesses standing to sue in its own right (by meeting the Article III requirements, including, *inter alia,* injury-in-fact); (2) the interests that the suit seeks to vindicate are germane to the organization's objectives; and (3) neither the claim asserted nor the relief demanded necessitates the participation of individual members. *See UAW v. Brock,* 477 U.S. 274, 282, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986); *Hunt v. Washington Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). The issue upon which the parties focus is whether any MWMBI member possesses standing in its own right. We find that the MWMBI has not met its burden of showing that an MWMBI member has suffered an injury-in-fact that is "actual or imminent" or "likely" to be redressed.

### III. *The Standing of the MWMBI Members*

■ The MWMBI contends that its members will suffer concrete economic injuries as a result of the decision below and that these injuries are sufficient to meet the requirements of Article III. Specifically, the MWMBI argues that with the Price Posting Laws invalidated, the Price Discrimination Law will not be adequately enforced. As a result, wholesalers that abide by the Price Discrimination Law will be at a competitive

---

**3.** Although the question in *AVX* was whether an intervenor had appellate standing, the *AVX* panel broadly suggested that the heightened specificity requirement applies *whenever* standing is at issue. *See* 962 F.2d at 115. A subsequent panel has questioned this suggestion, noting that the Supreme Court, in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), rejected as inconsistent with Fed.R.Civ.P. 8 a judicially-created heightened pleading requirement for certain civil rights suits. *See Adams v. Watson,* 10 F.3d 915, 919 n. 8 (1st Cir.1993).

Whatever effect the rationale of *Leatherman* might have on *AVX*'s dictum with respect to pleading requirements in the district court, it is clear that *AVX*'s core holding—that an intervenor seeking to establish *appellate* standing must set forth specific facts—remains good law in this circuit. We therefore are duty-bound to apply that holding here. *See, e.g., United States v. Sawyer,* 144 F.3d 191, 196 (1st Cir.1998).

**4.** Because the MWMBI has not met the minimal constitutional requirements, *see infra,* we do not reach the prudential elements of standing.

disadvantage vis-a-vis those that violate the law.[5]

While injury through economic competition is certainly possible, see e.g., *Adams*, 10 F.3d at 921, the MWMBI's alleged injury is not sufficiently imminent to confer standing. It is also questionable whether the alleged injury is redressable.

### A. The Imminence of the Alleged Injury

 Future injury must be imminent to qualify as injury-in-fact.[6] *See, e.g., Adams*, 10 F.3d at 921. The concept of imminence "is bounded by its Article III purpose: to ensure that the alleged injury is not too speculative." *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir.1997) (citing *Defenders of Wildlife*, 504 U.S. at 564 n. 2, 112 S.Ct. 2130). For this reason, almost all competitor injury cases focus on causal connections predicted by established economic theory. *See, e.g., Adams*, 10 F.3d at 923 ("[B]asic economic theory quite consistently transcends utter randomness by positing elemental laws of cause and effect predicated on actual market experience and *probable* market behavior."). Outside the sphere of economic theory, predicting future injury and the behavior of third parties is usually suspect. *See, e.g., id.* at 922–23 ("When considering any chain of

allegations for standing purposes, we may reject as overly speculative ... predictions of future events (especially *future actions by third parties* ) ...." ) (alteration in original) (citation and internal quotation marks omitted); *United Transp. Union v. ICC*, 891 F.2d 908, 912 n. 7 (D.C.Cir.1989) ("That a court believes itself bound to credit allegations of future injury that are firmly rooted in the basic laws of economics does not compel us to accept allegations founded solely on the complainant's speculation.").

In this case, the injury is not imminent because it depends upon several tenuous contingencies. The MWMBI's allegation of injury asks us to go beyond basic economic predictions and speculate that third-party wholesalers will violate the unchallenged Price Discrimination Law to such an extent that the violations will disadvantage wholesalers that obey the law.[7] The allegation also assumes that neither the enforcement mechanisms currently in place nor any conceivable mechanism that the Commission may institute, short of the invalidated Price Posting Laws, will prevent such violations. For the following reasons, we are unwilling to indulge such speculation.

Assuming *arguendo* that some wholesalers will choose to violate the Price Discrimina-

---

5. The MWMBI argues, relatedly, that the injuries at issue include "a marketplace where smaller, less influential retailers will be placed at a competitive disadvantage." Inasmuch as this alleged injury is to retailers rather than to wholesalers, the injury does not give the MWMBI standing. *See, e.g., Warth*, 422 U.S. at 499, 95 S.Ct. 2197 (stating that a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Moose Lodge No. 197 v. Irvis*, 407 U.S. 163, 166, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972)(similar).

6. Although the MWMBI also briefly mentions that the elimination of the Price Posting Laws has already caused the wholesalers economic loss, it fails to support its allegation with particulars describing any current injury—e.g., market destabilization, decreased profits, or external pressures to engage in price discrimination. We therefore disregard this allegation as conclusory, *see AVX*, 962 F.2d at 115, and confine our focus to whether the MWMBI members face an imminent future injury.

7. The MWMBI is in an unusual stance in this case because the injury alleged to some of its

members (the law-abiding wholesalers) may be the direct result of illegal activity by other members. Some circuits have determined that if there are conflicts of interest among an association's members, the association will fail either the germaneness-to-the-organization prong or the individual-participation prong of the associational standing test. *See, e.g., Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 864–65 (7th Cir.1996) (under germaneness-to-the-organization prong); *Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1251–53 (4th Cir.1991) (under individual-participation prong). Other circuits, however, permit standing even if there are such conflicts. *See, e.g., Associated Gen. Contractors of Cal. v. Coalition for Economic Equity*, 950 F.2d 1401, 1408–09 (9th Cir.1991).

We need not decide whether conflicts of interest among the MWMBI members defeat associational standing because we conclude that no MWMBI member has suffered an injury-in-fact. For present purposes, it is sufficient merely to note that, in all material respects, MWMBI-member wholesalers engaging in illegal price discrimination would be third parties with respect to the wholesalers that are putatively injured.

tion Law,[8] there is no showing that the violations will be substantial enough to disadvantage those competitors obeying the law. The MWMBI posits no estimations of how extensive the Price Discrimination Law violations will be. Nor does it suggest how widespread such violations must be to destabilize the market or injure law-abiding wholesalers. Rather, the MWMBI merely provides the affidavit of an economist who avers that wholesalers, faced with the "difficult choice" of engaging in price discrimination or "jeopardizing their sales to significant clients," may violate the law. The economist further states that "[t]o the extent" wholesalers violate the Price Discrimination Law, smaller retailers will be at a competitive disadvantage, a trend that "may lead quickly" to the elimination of smaller retailers and thereby increase the pressure on wholesalers to engage in price discrimination. This analysis lacks particulars about the likelihood of market destabilization and the extent of possible violations. *Cf. AVX*, 962 F.2d at 117 (finding no *particularized* showing of injury in environmental suit because there is no "fleshing-out" of facts such as identities of association's members or the extent and frequency of use of the natural resources at issue).

But even if wholesalers in large numbers attempted to violate the Price Discrimination Law, the MWMBI has failed to demonstrate that the state cannot or will not either use existing enforcement mechanisms or create new mechanisms to halt such violations. The MWMBI has the burden to show not merely that the Price Posting Laws would be more effective than other enforcement methods, but also that the Price Posting Laws would make such a difference to the Commission's

enforcement efforts that the invalidation of these laws would cause a substantial enough increase in violations to disadvantage law-abiding wholesalers.

Under extant state law, wholesalers must still provide retailers with the prices, including any discounts, that they provide to other customers. *See* Mass. Regs.Code tit. 204, § 2.14. Wholesalers must also maintain detailed records of all their sales. *See* 27 C.F.R. § 194.226. Thus, if retailers inform the Commission of suspected price discrimination, there would appear to be a documentary record for the Commission to investigate and, if necessary, present in an enforcement action in support of a request for sanctions. Furthermore, under Mass. Gen. Laws ch. 30A, the Commission has the power to reissue portions of the regulations that would not be illegal under the district court's analysis, including a provision that requires wholesalers to file price schedules with the Commission.[9]

The MWMBI suggests that even with price filings, a wholesaler could engage in price discrimination by changing its prices at will and then claiming that its favored customer made purchases at a time when the prices were lower. Using the documentary record, however, the Commission could attack such a transaction as a sham. Moreover, if wholesalers are intent upon violating the law, it seems as easy to charge one price and post another under the Price Posting Laws as it would be to change price lists by the hour to disguise illegal discrimination. The MWMBI has not pointed to any facts that persuade us that the Price Posting Laws are so superior to any other enforcement

---

8. While predicting the behavior of third parties is always dubious, it is particularly troubling to postulate that a third party will violate a valid law that is not being challenged. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (evincing an unwillingness to predict that plaintiffs will "violate an unchallenged law," be charged, and be tried in proceedings before defendants); *Nelsen v. King County*, 895 F.2d 1248, 1252 (9th Cir.1990); *Joseph v. United States Civil Serv. Comm'n*, 554 F.2d 1140, 1148 (D.C.Cir.1977). There is, however, evidence in the record of previous violations of the Price Posting Laws and the Price Discrimination Law. *See O'Shea*, 414 U.S. at 496, 94 S.Ct. 669 ("[P]ast wrongs are evidence bear-

ing on whether there is a real and immediate threat of repeated injury."). Therefore, despite our concerns about assuming that third parties will violate valid law in the future, we will assume that the threat of future violations is not too remote to constitute injury-in-fact.

9. Although the district court determined that the provision requiring the filing of prices would not violate the Sherman Act by itself, the court struck down this provision because it determined that the provision was not severable from those other provisions which in its view violated federal law.

mechanisms that the invalidation of the laws will cause the wholesalers imminent injury.

In sum, to credit the MWMBI's assertion of imminent economic injury, we would have to accept not only that wholesalers will violate existing law, but also that: (1) violations will occur in such numbers as to cause tangible economic injury to other wholesalers; and (2) none of the state's enforcement mechanisms, short of the Price Posting Laws, is adequate to alleviate the posited violations. For the reasons set forth above, the record before us does not permit either of these conclusions.

## B. *Redressability of the Alleged Injury*

The question whether the existing enforcement of the Price Discrimination Law is adequate not only implicates the imminence of the injury, but it also suggests a redressability problem. Even if the existing methods are less effective than the Price Posting Laws, the MWMBI has no warrant to tell the Commission *how* to enforce state laws. *Cf. Defenders of Wildlife*, 504 U.S. at 568, 112 S.Ct. 2130 ("[S]uits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations ... [are], even when premised on allegations of several instances of violations of law, ... rarely if ever appropriate for federal-court adjudication.") (citing *Allen*, 468 U.S. at 759–60, 104 S.Ct. 3315); *Diamond*, 476 U.S. at 64, 106 S.Ct. 1697 (noting that appellant could not force the State to enforce a statute against the appellees because "a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)). Because the state may choose not to enforce the Price Posting Laws even if the lower court decision were reversed, it is not clear that this appeal is "likely" to redress the MWMBI's alleged injury.

*Biszko v. RIHT Fin. Corp.*, 758 F.2d 769 (1st Cir.1985), is an analogous case. In *Biszko*, shareholders of a Rhode Island bank that had agreed to merge with a Massachusetts bank challenged the constitutionality of a Rhode Island statute that allowed interstate acquisitions of Rhode Island banks. *See id.* at 769. The statute limited acquisitions to New England banks during a two-year phase-in period, and by any bank thereafter. *See id.* at 770–71. The shareholders claimed that, absent the two-year regional restriction, with unrestricted competition they would have received more money for their stock in any merger. *See id.* at 772. They also argued that the nullification of the statute would redress their injury because the Rhode Island legislature would be moved to pass a statute permitting unrestricted interstate acquisitions. *See id.* at 772–73.

We, however, determined that even if there was injury-in-fact, the injury could not be redressed by a favorable decision: "The 'injury' that appellants suggest they have suffered is no more than the preclusion of a benefit that they might gain were the Rhode Island legislature to react in a certain way to a decision by this court. Such injury is not merely speculative—it is positively chimerical." *Id.* at 773. Similarly, in the present case redress for the MWMBI's alleged injury depends not only upon a reversal of the district court's decision, but also upon a state agency's decision to enforce a law after declining to appeal its invalidation. The MWMBI has not produced anything that indicates that the Commission would enforce the law if the district court's decision were overturned.

We do not mean to suggest, as plaintiffs do, that a private party can never appeal the determination that a state statute is unconstitutional if the state declines the appeal. Such a principle embodies an overly broad interpretation of *Diamond*, 476 U.S. 54, 106 S.Ct. 1697, 90 L.Ed.2d 48, that has been rejected by this circuit, *see AVX*, 962 F.2d 108. Rather, we emphasize that in this case, where there is no indication that the state will choose to enforce the challenged regulations against a third party, and where the intervenor does not receive a direct benefit from a reversal of the decision below, it is not "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130 (citation and

internal quotation marks omitted). Therefore, even if the MWMBI could demonstrate injury-in-fact, it would have no standing to prosecute this appeal.

### IV. *Conclusion*

Because there is insufficient "immediacy and reality to [the] allegations of future injury" to warrant appellate jurisdiction, *O'Shea*, 414 U.S. at 497, 94 S.Ct. 669 (citation and internal quotation marks omitted), we grant plaintiffs' motions to dismiss for lack of appellate standing.

*Appeal dismissed.* Costs to appellees.