USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1317

 SEA SHORE CORPORATION D/B/A CANTERBURY LIQUORS & PANTRY
 AND WHITEHALL CO., LIMITED,
 
 Plaintiffs, Appellees,
 
 v.
 
WALTER J. SULLIVAN, JR., SUZANNE IANELLA AND FREDERICK W. RILEY
INDIVIDUALLY AND IN THEIR REPRESENTATIVE AND OFFICIAL CAPACITY AS
 MEMBERS OF THE MASSACHUSETTS ALCOHOLIC BEVERAGES CONTROL
 COMMISSION,
 
 Defendants, Appellees.
 
 ____________________
 
 MASSACHUSETTS WHOLESALERS OF MALT BEVERAGES, INC.,
 
 Intervenor, Appellant.
 

 APPEAL FROM THE UNITED STATES DISTRICT COURT
 
 FOR THE DISTRICT OF MASSACHUSETTS
 
 [Hon. Mark L. Wolf, U.S. District Judge]
 

 Before
 
 
 Selya, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 H. Glenn Alberich with whom Thomas Fenerty, Eileen M. Fava,
Molly S. Boast, and LeBoeuf, Lamb, Greene & MacRae, L.L.P., were on
brief for intervenor, appellant.
 Gerald J. Caruso, with whom Ferriter, Scobbo, Caruso, &
Rodophele, P.C., Alan L. Kovacs, and Bass, Doherty & Kovacs, were
on brief for plaintiff, appellee Sea Shore Corp.
 Robert S. Frank, Jr., with whom Robert M. Buchanan, Jr.,
Joshua A. Engel, and Choate, Hall & Stewart, were on brief for
plaintiff, appellee Whitehall Co., Ltd.
 Robert D. Paul, J. Mark Gidley, and White & Case LLP on
brief for The Stop & Shop Companies, Inc., amicus curiae.
 Thomas R. Kiley, Steven H. Goldberg, and Cosgrove, Eisenberg
& Kiley, P.C. on brief for Massachusetts Food Association, amicus
curiae.
 
 

October 20, 1998

 
 

 STAHL, Circuit Judge. The Massachusetts Wholesalers of
Malt Beverages, Inc. (the "MWMBI"), a defendant-intervenor below,
has filed a notice of appeal from the district court's ruling that
Massachusetts regulations requiring price posting in the sale of
alcoholic beverages violate the Sherman Act, 15 U.S.C. 1. 
Because the state defendants in the action below did not appeal,
there is a threshold question whether the MWMBI has independent
standing to maintain this appeal. Because the MWMBI does not meet
standing requirements, we dismiss for lack of appellate
jurisdiction.
 I. Background
 On August 23, 1994, plaintiff Sea Shore Corporation d/b/a 
Canterbury Liquors & Pantry, a retailer of alcoholic beverages,
brought an official-capacity action against members of the
Massachusetts Alcoholic Beverages Control Commission (the
"Commission"), the state body charged with the enforcement of
liquor pricing laws. Whitehall Company, Limited, a wholesaler of
alcoholic beverages, intervened as a plaintiff, and the MWMBI, a
trade association of beer wholesalers, intervened as a defendant.
Plaintiffs sought: (1) a declaration that certain provisions of
Mass. Gen. Laws ch. 138, 25A and related regulations, Mass. Regs.
Code tit. 204, 6.01-6.07 (collectively, the "Price Posting
Laws"), are a per se violation of the Sherman Act and are not
shielded from invalidation by the state action doctrine; and
(2) orders permanently enjoining the Commission from enforcing the
Price Posting Laws. 
 Plaintiffs did not challenge the first subparagraph of
Mass. Gen. Laws ch. 138, 25A, which prohibits price
discrimination in the sale of alcoholic beverages (the "Price
Discrimination Law"). Rather, they contested only the provisions
of the statute and regulations that provide for a "post and hold"
scheme of pricing. Under the challenged provisions, Massachusetts
wholesalers must post all prices that they will charge for the
following month. See Mass. Gen. Laws ch. 138, 25A; Mass. Regs.
Code tit. 204, 6.03(3). For ten days after the initial posting,
wholesalers are permitted to amend the price on a specific brand
product to meet, but not beat, the lowest posted price for that
product. See Mass. Regs. Code tit. 204, 6.05(1). They cannot
otherwise raise or lower prices during the month in question. Seeid. 
 On July 19, 1996, plaintiffs filed motions for summary
judgment, and defendants filed cross-motions for partial summary
judgment. On February 3, 1998, the district court granted
plaintiffs' motions for summary judgment and denied defendants'
motions. The district court concluded that the Price Posting Laws
are a state hybrid restraint constituting a per se violation of the
Sherman Act, 15 U.S.C. 1, and that these laws are not saved by
the state action defense. The court therefore found that the
Sherman Act preempted the Price Posting Laws, pursuant to the
Supremacy Clause of the United States Constitution. See U.S.
Const. art. VI.
 Following this ruling, the Commission informed the
district court that it would not appeal and would comply
voluntarily with the court's decision. The MWMBI, however, filed
a notice of appeal on March 27, 1998. On April 27, 1998,
plaintiffs moved to dismiss the MWMBI's appeal for lack of standing
to press the appeal. We deferred ruling on the motion until after
oral argument. 
 If a party lacks standing, we have no jurisdiction to
decide the merits of the case. See FW/PBS, Inc. v. City of Dallas,
493 U.S. 215, 231 (1990); Valley Forge Christian College v.
Americans United for Separation of Church & State, Inc., 454 U.S.
464, 475-76 (1982). Therefore, we first examine whether the MWMBI
has standing to appeal the district court's grant of summary
judgment.
 II. The Article III Requirements for Standing
 The burden of stating facts sufficient to support
standing rests with the party seeking to assert federal
jurisdiction. See Warth v. Seldin, 422 U.S. 490, 518 (1975). This
burden applies to a party seeking to assert federal jurisdiction on
appeal. See Diamond v. Charles, 476 U.S. 54, 68 (1986) (involving
intervenor appellant); United States v. AVX Corp., 962 F.2d 108,
114 (1st Cir. 1992) (same).
 In addressing plaintiffs' motions to dismiss for lack of
jurisdiction, we accept as true all material allegations of the
MWMBI. See AVX, 962 F.2d at 114. We need not, however, credit
"bald assertions," "subjective characterizations, optimistic
predictions, or problematic suppositions." Id. at 115 (citations
and internal quotation marks omitted). "'[E]mpirically
unverifiable' conclusions, not 'logically compelled, or at least
supported, by the stated facts,' deserve no deference." Id.(quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16
(1st Cir. 1989)). Moreover, we require heightened specificity from
an intervenor seeking to establish appellate standing. See AVX,
962 F.2d at 115. 
 As an intervenor seeking singlehandedly to appeal a
judgment, the MWMBI must independently pass the test of Article III
standing. See Diamond, 476 U.S. at 68 ("[A]n intervenor's right to
continue a suit in the absence of the party on whose side
intervention was permitted is contingent upon a showing by the
intervenor that he fulfills the requirements of Art. III."); AVX,
962 F.2d at 113. We cannot assume standing to appeal merely
because the party was appropriately permitted to intervene in the
proceeding below. See AVX, 962 F.2d at 112 (noting that when the
original state defendant does not appeal, the intervenor can no
longer "ride the state's coattails" and "derive the benefit of the
state's standing"). Thus, we review the constitutional
requirements for standing.
 We start with the basics. The MWMBI must demonstrate:
(1) an "injury-in-fact"; (2) that is "fairly traceable" to the
proceeding below; and (3) is "likely" to be "redressed by a
favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555,
560 (1992); see also Allen v. Wright, 468 U.S. 737, 751 (1984). 
Although these concepts are "concededly not susceptible of precise
definition," case law has provided substantial guidance. Allen,
468 U.S. at 751. Most importantly, "injury-in-fact" must involve
"an invasion of a legally-protected interest which is (a) concrete
and particularized; and (b) actual or imminent, not conjectural or
hypothetical." Defenders of Wildlife, 504 U.S. at 560 (citations
and internal quotation marks omitted). 
 Because the MWMBI is alleging injury to its constituent
members rather than to itself as an organization, additional
considerations are also relevant. An association may assert
standing on behalf of its members if: (1) at least one of its
members possesses standing to sue in its own right (by meeting the
Article III requirements, including, inter alia, injury-in-fact);
(2) the interests that the suit seeks to vindicate are germane to
the organization's objectives; and (3) neither the claim asserted
nor the relief demanded necessitates the participation of
individual members. See UAW v. Brock, 477 U.S. 274, 282 (1986);
Hunt v. Washington Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). 
The issue upon which the parties focus is whether any MWMBI member
possesses standing in its own right. We find that the MWMBI has
not met its burden of showing that an MWMBI member has suffered an
injury-in-fact that is "actual or imminent" or "likely" to be
redressed.
 III. The Standing of the MWMBI Members
 The MWMBI contends that its members will suffer concrete
economic injuries as a result of the decision below and that these
injuries are sufficient to meet the requirements of Article III. 
Specifically, the MWMBI argues that with the Price Posting Laws
invalidated, the Price Discrimination Law will not be adequately
enforced. As a result, wholesalers that abide by the Price
Discrimination Law will be at a competitive disadvantage vis-a-vis
those that violate the law. 
 While injury through economic competition is certainly
possible, see e.g., Adams, 10 F.3d at 921, the MWMBI's alleged
injury is not sufficiently imminent to confer standing. It is also
questionable whether the alleged injury is redressable.
 A. The Imminence of the Alleged Injury 
 Future injury must be imminent to qualify as injury-in-
fact. See, e.g., Adams, 10 F.3d at 921. The concept of imminence
"is bounded by its Article III purpose: to ensure that the alleged
injury is not too speculative." Berner v. Delahanty, 129 F.3d 20,
24 (1st Cir. 1997) (citing Defenders of Wildlife, 504 U.S. at 564
n.2). For this reason, almost all competitor injury cases focus on
causal connections predicted by established economic theory. See,
e.g., Adams, 10 F.3d at 923 ("[B]asic economic theory quite
consistently transcends utter randomness by positing elemental laws
of cause and effect predicated on actual market experience and
probable market behavior."). Outside the sphere of economic
theory, predicting future injury and the behavior of third parties
is usually suspect. See, e.g., id. at 922-23 ("When considering
any chain of allegations for standing purposes, we may reject as
overly speculative . . . predictions of future events (especially
future actions by third parties) . . . .") (alteration in original)
(citation and internal quotation marks omitted); United Transp.
Union v. ICC, 891 F.2d 908, 912 n.7 (D.C. Cir. 1989) ("That a court
believes itself bound to credit allegations of future injury that
are firmly rooted in the basic laws of economics does not compel us
to accept allegations founded solely on the complainant's
speculation."). 
 In this case, the injury is not imminent because it
depends upon several tenuous contingencies. The MWMBI's allegation
of injury asks us to go beyond basic economic predictions and
speculate that third-party wholesalers will violate the
unchallenged Price Discrimination Law to such an extent that the
violations will disadvantage wholesalers that obey the law. The
allegation also assumes that neither the enforcement mechanisms
currently in place nor any conceivable mechanism that the
Commission may institute, short of the invalidated Price Posting
Laws, will prevent such violations. For the following reasons, we
are unwilling to indulge such speculation.
 Assuming arguendo that some wholesalers will choose to
violate the Price Discrimination Law, there is no showing that the
violations will be substantial enough to disadvantage those
competitors obeying the law. The MWMBI posits no estimations of
how extensive the Price Discrimination Law violations will be. Nor
does it suggest how widespread such violations must be to
destabilize the market or injure law-abiding wholesalers. Rather,
the MWMBI merely provides the affidavit of an economist who avers
that wholesalers, faced with the "difficult choice" of engaging in
price discrimination or "jeopardizing their sales to significant
clients," may violate the law. The economist further states that
"[t]o the extent" wholesalers violate the Price Discrimination Law,
smaller retailers will be at a competitive disadvantage, a trend
that "may lead quickly" to the elimination of smaller retailers and
thereby increase the pressure on wholesalers to engage in price
discrimination. This analysis lacks particulars about the
likelihood of market destabilization and the extent of possible
violations. Cf. AVX, 962 F.2d at 117 (finding no particularizedshowing of injury in environmental suit because there is no
"fleshing-out" of facts such as identities of association's members
or the extent and frequency of use of the natural resources at
issue). 
 But even if wholesalers in large numbers attempted to
violate the Price Discrimination Law, the MWMBI has failed to
demonstrate that the state cannot or will not either use existing
enforcement mechanisms or create new mechanisms to halt such
violations. The MWMBI has the burden to show not merely that the
Price Posting Laws would be more effective than other enforcement
methods, but also that the Price Posting Laws would make such a
difference to the Commission's enforcement efforts that the
invalidation of these laws would cause a substantial enough
increase in violations to disadvantage law-abiding wholesalers. 
 Under extant state law, wholesalers must still provide
retailers with the prices, including any discounts, that they
provide to other customers. See Mass. Regs. Code tit. 204, 2.14. 
Wholesalers must also maintain detailed records of all their sales. 
See 27 C.F.R. 194.226. Thus, if retailers inform the Commission
of suspected price discrimination, there would appear to be a
documentary record for the Commission to investigate and, if
necessary, present in an enforcement action in support of a request
for sanctions. Furthermore, under Mass. Gen. Laws ch. 30A, the
Commission has the power to reissue portions of the regulations
that would not be illegal under the district court's analysis,
including a provision that requires wholesalers to file price
schedules with the Commission. 
 The MWMBI suggests that even with price filings, a
wholesaler could engage in price discrimination by changing its
prices at will and then claiming that its favored customer made
purchases at a time when the prices were lower. Using the
documentary record, however, the Commission could attack such a
transaction as a sham. Moreover, if wholesalers are intent upon
violating the law, it seems as easy to charge one price and post
another under the Price Posting Laws as it would be to change price
lists by the hour to disguise illegal discrimination. The MWMBI
has not pointed to any facts that persuade us that the Price
Posting Laws are so superior to any other enforcement mechanisms
that the invalidation of the laws will cause the wholesalers
imminent injury.
 In sum, to credit the MWMBI's assertion of imminent
economic injury, we would have to accept not only that wholesalers
will violate existing law, but also that: (1) violations will occur
in such numbers as to cause tangible economic injury to other
wholesalers; and (2) none of the state's enforcement mechanisms,
short of the Price Posting Laws, is adequate to alleviate the
posited violations. For the reasons set forth above, the record
before us does not permit either of these conclusions.
 B. Redressability of the Alleged Injury 
 The question whether the existing enforcement of the
Price Discrimination Law is adequate not only implicates the
imminence of the injury, but it also suggests a redressability
problem. Even if the existing methods are less effective than the
Price Posting Laws, the MWMBI has no warrant to tell the Commission
how to enforce state laws. Cf. Defenders of Wildlife, 504 U.S. at
568 ("[S]uits challenging, not specifically identifiable Government
violations of law, but the particular programs agencies establish
to carry out their legal obligations . . . [are], even when
premised on allegations of several instances of violations of law,
. . . rarely if ever appropriate for federal-court adjudication.")
(citing Allen, 468 U.S. at 759-60); Diamond, 476 U.S. at 64 (noting
that appellant could not force the State to enforce a statute
against the appellees because "a private citizen lacks a judicially
cognizable interest in the prosecution or nonprosecution of
another") (citing Linda R.S. v. Richard D., 410 U.S. 614, 619
(1973)). Because the state may choose not to enforce the Price
Posting Laws even if the lower court decision were reversed, it is
not clear that this appeal is "likely" to redress the MWMBI's
alleged injury.
 Biszko v. RIHT Fin. Corp., 758 F.2d 769 (1st Cir. 1985),
is an analogous case. In Biszko, shareholders of a Rhode Island
bank that had agreed to merge with a Massachusetts bank challenged
the constitutionality of a Rhode Island statute that allowed
interstate acquisitions of Rhode Island banks. See id. at 769. 
The statute limited acquisitions to New England banks during a two-
year phase-in period, and by any bank thereafter. See id. at 770-
71. The shareholders claimed that, absent the two-year regional
restriction, with unrestricted competition they would have received
more money for their stock in any merger. See id. at 772. They
also argued that the nullification of the statute would redress
their injury because the Rhode Island legislature would be moved to
pass a statute permitting unrestricted interstate acquisitions. 
See id. at 772-73. 
 We, however, determined that even if there was injury-in-
fact, the injury could not be redressed by a favorable decision:
"The 'injury' that appellants suggest they have suffered is no more
than the preclusion of a benefit that they might gain were the
Rhode Island legislature to react in a certain way to a decision by
this court. Such injury is not merely speculative--it is
positively chimerical." Id. at 773. Similarly, in the present
case redress for the MWMBI's alleged injury depends not only upon
a reversal of the district court's decision, but also upon a state
agency's decision to enforce a law after declining to appeal its
invalidation. The MWMBI has not produced anything that indicates
that the Commission would enforce the law if the district court's
decision were overturned. 
 We do not mean to suggest, as plaintiffs do, that a
private party can never appeal the determination that a state
statute is unconstitutional if the state declines the appeal. Such
a principle embodies an overly broad interpretation of Diamond, 476
U.S. 54, that has been rejected by this circuit, see AVX, 962 F.2d
108. Rather, we emphasize that in this case, where there is no
indication that the state will choose to enforce the challenged
regulations against a third party, and where the intervenor does
not receive a direct benefit from a reversal of the decision below,
it is not "likely, as opposed to merely speculative, that the
injury will be redressed by a favorable decision." Defenders of
Wildlife, 504 U.S. at 561 (citation and internal quotation marks
omitted). Therefore, even if the MWMBI could demonstrate injury-
in-fact, it would have no standing to prosecute this appeal. 
 IV. Conclusion
 Because there is insufficient "immediacy and reality to
[the] allegations of future injury" to warrant appellate
jurisdiction, O'Shea, 414 U.S. at 497 (citation and internal
quotation marks omitted), we grant plaintiffs' motions to dismiss
for lack of appellate standing. 
 Appeal dismissed. Costs to appellees.