Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-2709

ANDREW BARKER,

Petitioner,

v.

TRANSPORTATION SECURITY ADMINISTRATION;
UNITED STATES DEPARTMENT OF HOMELAND SECURITY,

Respondent.

APPEAL FROM THE UNITED STATES TRANSPORTATION

SECURITY ADMINISTRATION

Before

Boudin, John R. Gibson,[*] and
Howard, Circuit Judges.

Mark C. O'Connor for petitioner.
Sarang V. Damle for respondent.

November 20, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, <u>Circuit Judge</u>. Andrew Barker seeks review of action taken by the Transportation Safety Administration ("TSA") allegedly in violation of its lawful authority. Barker alleges that his due process rights were violated by the TSA's issuance of a "warning notice" to him at the conclusion of its investigation into whether he conveyed a false bomb threat in violation of 49 U.S.C. § 46302. He asserts that the TSA lacked legal authority to issue such a notice. In the alternative, he argues that if the agency was within its authority to issue the warning notice, that it violated his due process rights by doing so without affording him a full administrative hearing. He seeks rescission of the warning notice and an injunction preventing the TSA from issuing future warning notices in connection with actual, alleged, or suspected violations of 49 U.S.C. § 46302. We conclude that Barker lacks standing to bring these claims and we dismiss the petition for review.

<u>Background</u>

On August 24, 2006, Andrew Barker was scheduled to travel from Detroit Metropolitan Wayne County Airport (DMW) to New York's LaGuardia Airport on Northwest Airlines flight 538 departing at 7:19 p.m. Barker had traveled the previous day from Atlanta to Detroit, on his way home to New York following a lengthy business trip. Barker arrived several hours early for his flight. He checked a single bag, received a boarding pass, and left the

airport to attend a meeting. At approximately 7:25 p.m., Barker arrived at the departure gate for his flight and a Northwest Airlines gate agent informed him that there was no longer a seat available for him. A dispute arose between the gate agent and Barker concerning whether he could still board the flight. Barker eventually requested that his checked luggage be returned to him and he was instructed that it could not be removed from the plane and that he would have to wait for a supervisor to arrive. Several witnesses then heard Barker make a reference to a bomb being in the bag, although witness statements varied as to the precise language used. A second gate agent overheard Barker's statement and instructed the first to contact the airport police. Barker then attempted to retract the statement. The gate agent contacted the DMW Airport Police and the Federal Bureau of Investigation was also informed. Law enforcement officials arrived and Barker was taken into custody. A subsequent search of Barker's luggage revealed that it did not contain a bomb and no charges were filed.

On September 12, 2006, the TSA sent Barker a written "letter of investigation" informing him that it was investigating his alleged violation of 49 U.S.C. § 46302[1] for conveying false

---

[1] 49 U.S.C. § 46302(a):
  Civil Penalty.- A person that, knowing the information to be false, gives, or causes to be given, under circumstances in which the information reasonably may be believed, false information about an alleged attempt being made or to be made to do an act that would

information and threats to Northwest Airlines personnel. The letter informed Barker that, as part of the TSA's investigation, he was being afforded an opportunity to "submit, in writing, any information regarding th[e] matter." The following month, Barker's attorney submitted a letter on Barker's behalf denying the allegations and pointing out various inconsistencies in the witnesses' statements. In November, the TSA concluded its investigation and the inspector assigned to the incident concluded that Barker had violated 49 U.S.C. § 46302 by conveying false information of a bomb threat and recommended that he be given a $500 civil penalty. The agency did not follow that recommendation. Instead, ten months later, it issued a "warning notice" informing Barker that the investigation was complete and that a violation of § 46302 "may have occurred." The warning notice set forth the language of § 46302 and concluded: "At this time, the Transportation Safety Administration has determined that this Warning Notice adequately addresses the incident."

After receiving the warning notice, Barker's attorney wrote a letter to the TSA arguing that the warning notice did not actually "provide any 'warning'" to Barker and that therefore, its only purpose must have been to create a formal record against Barker

violate sections 46502(a), 46504, 46505, or 46506 of this title, is liable to the United States Government for a civil penalty of not more than $10,000 for each violation.

-4-

that could be used against him by the TSA in the future. The letter also expressed concerns that the TSA had acted outside of its legal authority by issuing the notice. The TSA replied, assuring Barker that the warning notice was not a public record, was not subject to Freedom of Information Act (FOIA) requests,[2] and that it would not result in Barker's placement on a "no-fly" list. The TSA also stated that it had the authority to issue the warning notice and that it would not repeal its decision to do so. Thereafter, on November 13, 2007, Barker filed the present petition for review in this Court, invoking jurisdiction under 49 U.S.C. § 46110.

## Discussion

Barker alleges that the TSA's issuance of a warning notice to him following its investigation into his alleged violation of 49 U.S.C. § 46302 was outside the scope of the agency's authority. Barker argues that the statute provides only for the issuance of a civil penalty, not a warning notice, and that although the TSA has regulatory authority to issue a warning notice for alleged violations of other statutes for which it has enforcement responsibilities, it has no such authority with regard to

---

[2]Specifically, the TSA indicated that "If [it] received a request to release the warning notice under [FOIA] or otherwise, the agency would excise all of Mr. Barker's identifying information on privacy grounds, so that document would not be attributable to him."

investigations under § 46302.[3]

In response to Barker's petition, the TSA argues that Barker has failed to allege any "cognizable legal or practical consequence flowing from the TSA's issuance of the Warning Notice" and therefore this Court lacks jurisdiction over Barker's claims. More specifically, the TSA argues that this Court is without jurisdiction "under either the rubric of Article III standing, or principles of administrative law that require an order to be 'final' before it can be reviewed." The TSA also addresses the merits, arguing that its issuance of a warning notice was within its lawful authority and comported with due process.

Because Article III standing is required for this Court to exercise jurisdiction, we must determine its presence at the outset. See Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002) ("[T]his Court must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case."). "The doctrine of constitutional standing reflects the fundamental limitation of judicial power to 'Cases' and 'Controversies,' under Article III of the Constitution." Sutliffe

_____

[3]After oral argument in this case, the TSA revised its regulations. See 74 Fed. Reg. 36,030 (July 21, 2009). The regulations now provide that the TSA may issue a warning notice for "a violation or an alleged violation" of any "TSA requirement." See 49 C.F.R. § 1503.301(a). Although we decide this case on the basis of standing, we note that this change in the TSA's regulations would render moot Barker's request to enjoin the TSA from issuing such warning notices in the future.

v. Epping School Dist., 2009 WL 2973115, at * 8 (1st Cir. September 17, 2009) (internal quotation marks and citation omitted). To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 180-81 (2000) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)). "The burden of stating facts sufficient to support standing rests with the party seeking to assert federal jurisdiction." Sea Shore Corp. v. Sullivan, 158 F.3d 51, 54 (1st Cir.1998).

Here, Barker has failed to allege any concrete actual or imminent injury. As to actual injury, Barker argues that having received a letter that the TSA was unauthorized to send damaged his "liberty interests." Barker has not, however, identified what "liberty interests" are supposedly affected. Indeed, Barker admits that the warning notice "does not request or require . . . Mr. Barker to take any corrective action or to comply with any regulatory matter under the TSA's jurisdiction." This nebulous argument is at best a claim of procedural error which does not excuse the absence of an actual injury. "[D]eprivation of a

procedural right without some concrete interest that is affected by the deprivation – a procedural right in vacuo – is insufficient to create Article III standing." <u>Summers</u> v. <u>Earth Island Inst.</u>, 129 S. Ct. 1142, 1151 (2009). Barker has failed to allege any actual, concrete interest that was affected by issuance of the letter.

The other consequences Barker suggests may stem from the warning notice have yet to occur and are anything but imminent. Barker argues that if he is ever the subject of another TSA investigation, the warning notice will be in his file and may be used against him. Such a consequence, however, is far too speculative to meet the "injury in fact" requirement of Article III. <u>See</u> <u>Ctr. for Law and Educ.</u> v. <u>Dep't of Educ.</u>, 396 F.3d 1152, 1161 (D.C. Cir. 2005) (no standing where "[a]ppellants alleged direct injury styled as 'increased risk,' in the form of giving the States the opportunity to injure Appellants' interests"); <u>see</u> <u>also</u> <u>National Counsel of La Raza</u> v. <u>Gonzales</u>, 468 F.Supp.2d 429, 438-440 (E.D.N.Y. 2007) (rejecting claim of "heightened risk" of future arrest by placement of plaintiff's immigration data into the NCIC database as too speculative to constitute an injury in fact). Further, should such a future investigation occur, Barker could assert due process claims in connection with those proceedings. Barker also alleges that reputational harm may result from the TSA's decision to place the warning notice in Barker's TSA file. He has not, however, alleged that this confidential record has or

ever will be accessed by the public.  In fact, Barker has received assurances from the TSA to the contrary and it is Barker, not the TSA, who made this matter public by filing this lawsuit.  <u>See</u> <u>id.</u> at 444 ("The speculation that at some point in the future some unauthorized party may access plaintiffs' file in violation of a plaintiff members' privacy right does not satisfy the requirement that plaintiffs identify an 'actual or imminent,' 'concrete and particularized' injury.").

We conclude that Barker lacks Article III standing because he has failed to allege an actual or imminent injury in fact. Accordingly, this Court can not exercise jurisdiction over his claims.

<u>Conclusion</u>

For the foregoing reasons, the Petition for Review is dismissed.