**12-4137-cv**
*Doe v. Whelan*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2013

No. 12-4137-cv

JANE DOE, CHILD ONE DOE, CHILD TWO DOE, AND
CHILD THREE DOE, ALL THROUGH THEIR PARENT AND
NEXT FRIEND, JANE DOE,
*Plaintiffs-Appellants.*

*v.*

ANDREW WHELAN, DAVID WILLIAMS, KENNETH
MYSOGLAND,
*Defendants-Appellees.*[*]

————

Appeal from the United States District Court
for the District of Connecticut.
No. 08 CV 846 (TLM) — Tucker L. Melançon, of the Western District
of Louisiana, sitting by designation.

————

ARGUED: AUGUST 22, 2013
DECIDED: OCTOBER 16, 2013

————

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the
listing of the parties above.

Before: CABRANES, HALL, and CHIN, *Circuit Judges.*

————

In this appeal we consider whether the United States District Court for the District of Connecticut (Tucker L. Melançon, *Judge,* of the Western District of Louisiana, sitting by designation) erred in granting summary judgment to employees of the Connecticut Department of Children and Families on the ground of qualified immunity in this 42 U.S.C. § 1983 action seeking damages for the removal of three children from their home without parental consent or a court order.

We hold, based on undisputed facts in the record, that the defendants' decision to remove the children without parental consent or a court order was justified by an objectively reasonable belief that there was an imminent threat to the children's safety. Accordingly, we **AFFIRM** the judgment of the District Court.

————

> KATHRYN EMMETT, Emmett & Glander, Stamford, CT, *for Plaintiffs-Appellants.*
>
> LYNN D. WITTENBRINK, Assistant Attorney General, *for* George Jepsen, Attorney General of Connecticut, Hartford, CT, *for Defendants-Appellees.*

————

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff Jane Doe, on behalf of herself and her three children (the "Doe Children" and, jointly with Doe, "plaintiffs"), brought this 42 U.S.C. § 1983 action against defendants Andrew Whelan, David Williams, and Kenneth Mysogland, three employees of the Connecticut Department of Children and Families ("DCF"). Plaintiffs allege that the removal of the Doe Children from Doe's home without a court order violated their rights to due process of law and to freedom from unreasonable seizures under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The United States District Court for the District of Connecticut (Tucker L. Melançon, *Judge*, of the Western District of Louisiana, sitting by designation) granted summary judgment to the defendants on the basis of qualified immunity. Plaintiffs appealed.

We now hold, based on undisputed facts in the record, that the defendants' decision to remove the children without parental consent or a court order was justified by an objectively reasonable belief that there was an imminent threat to the children's safety. The defendants are therefore protected by the doctrine of qualified immunity and, accordingly, we affirm the judgment of the District Court.

## I. BACKGROUND

### A.

The events giving rise to this litigation began on April 30, 2005, when Richard Roe ("Roe"), the Doe Children's father, was arrested after assaulting a pregnant Jane Doe in their residence. **JA795**; **Red 4.** The children—then aged seven years, four years, and twenty-two months old—were at home during the assault. The DCF

report of the incident authored by defendant Williams noted that the "[f]ather seriously physically hurt [the] mother by punching her in the face multiple times causing . . . significant injuries to the 5 week pregnant mother." Joint App'x 795. The report also noted that there had been previous assaults, and that actions taken thus far were "not adequate in regards [sic] to protecting [the] children." *Id.*

On May 1, 2005, DCF entered into a "Service Agreement/Safety Plan" with Doe, pursuant to which Doe agreed not to have contact with Roe or to allow him to have contact with the children. On May 2, 2005, the Superior Court of the State of Connecticut issued a Family Violence Protective Order (the "Protective Order") against Roe which, among other things, directed Roe to "[r]efrain from entering the family dwelling, the dwelling of the Victim or wherever the Victim shall reside." Joint App'x 168. On May 5, following issuance of the Protective Order, DCF entered into a new "Service Agreement/Safety Plan" with Doe, pursuant to which Doe could be in contact with Roe but could not allow Roe inside her home.

On June 3, 2005, defendant Whelan, a Social Work Supervisor at DCF, learned that the case was being assigned to him. Whelan spoke with prior DCF workers and reviewed the case files. At that time, the previous two "Service Agreement/Safety Plans" governing arrangements between Richard Roe, Jane Doe, and the Doe Children had expired, but the Protective Order of the Superior Court directed at Roe remained in effect.[1]

---

[1] The District Court mistakenly stated that "Jane Doe violated two DCF Service Agreement/Safety Plans in which she agreed not to let the Doe Children's father into the home and to contact the police if he sought to gain entry." *Doe v. Whelan*, No. 08-846 (TLM), 2012 WL 4056723, at *6 (D. Conn. Sept. 14, 2012).

On June 4, 2005, Whelan went to Doe's home in New Canaan, Connecticut, accompanied by two New Canaan police officers, to conduct a "DCF welfare check." Joint App'x 206. Upon arrival, Whelan noticed that Roe's car was in the driveway and his personal items were in the house. In response to questioning, Doe eventually admitted that she had permitted Roe to accompany her and the children to her home—in violation of the Superior Court's Protective Order—so that Roe could "tuck" the children into bed. While at the home, Whelan also observed Roe run into the nearby woods with no shirt or shoes, likely having jumped out of a second-story window.

Whelan promptly sought and received authorization from defendant Mysogland, a Program Supervisor at DCF, to remove the children pursuant to Connecticut General Statute § 17a-101g(f), which authorizes DCF to remove children from the custody of their parents for up to ninety-six hours if DCF "has probable cause to believe that the child or any other child in the household is in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety . . . ."[2] Conn. Gen. Stat. § 17a-101g(e). The children were removed at 9:40 p.m. and transported to the home of Richard Roe's sister in Branford, Connecticut.

---

[2] Defendant Williams was named as the authorizing officer on the June 4 notice of "Immediate Removal/96-Hour Hold of Child(ren)." Joint App'x 204. Williams, who was Whelan's immediate supervisor, was vested with the authority to conduct removals without court orders. It is undisputed, however, that Williams was not involved in the June 4 removal. Rather, Mysogland told Whelan to put Williams's name on the form instead of Mysogland's for personal reasons. Mysogland then notified Williams that his name had been used, and Williams agreed with the removal decision. The District Court granted summary judgment for Williams on the ground that he was not involved in the removal. *Doe*, 2012 WL 4056723, at *3. Insofar as Doe's appeal challenges this aspect of the District Court's order we affirm for the reasons stated by the District Court.

The following Tuesday, June 7, 2005, Judge A. William Mottolese of the Superior Court of Connecticut issued three *ex parte* Orders of Temporary Custody ("OTC"), which temporarily vested custody of the three children with DCF. On July 13, 2005,—after a two-day evidentiary hearing at which Doe and Roe were represented by separate counsel—Judge Carl E. Taylor of the Superior Court for Juvenile Matters issued an order vesting custody with DCF based on a finding that "each of the children is in immediate physical danger of [his or her] surroundings and that continuation in their home is contrary to their welfare." *Doe v. Whelan*, No. 08-846 (TLM), 2012 WL 4056723, at *2 (D. Conn. Sept. 14, 2012) (quoting July 13, 2005 Order). The Doe Children remained with Roe's sister from June 4 until September 6, 2005, when Judge Mottolese conducted another hearing in which the Doe Children were adjudicated neglected—pursuant to a stipulation by both Doe and Roe—and returned to Doe's custody under protective supervision for one year. Joint App'x 897. Both Doe and Roe were ordered to comply with "Specific Steps" the violation of which could result in incarceration. *Id*.

**B.**

Plaintiffs brought this suit on June 4, 2008, seeking damages pursuant to 42 U.S.C. § 1983. They alleged that, by removing the Doe children from their home in the absence of a court order, the defendants "deprived plaintiffs of their rights to due process and to be free from unreasonable seizures under the 4th, 5th and 14th Amendments." Complaint ¶ 1. On September 14, 2012, the District Court granted the defendants' motion for summary judgment, concluding, in relevant part, that the defendants' removal of the children from Doe's home was "objectively reasonable" in the

circumstances, and therefore, that they were entitled to qualified immunity. *Doe*, 2012 WL 4056723, at *4-7.

Plaintiffs timely appealed.

## II. DISCUSSION

Plaintiffs argue that the District Court "erred in granting summary judgment to the defendants on the basis of qualified immunity."[3] Appellant's Br. 1. We review *de novo* an order granting summary judgment and "resolv[e] all ambiguities and draw[ ] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Burg v. Gosselin*, 591 F.3d 95, 97 (2d Cir. 2010) (internal quotation marks omitted). We affirm when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As we have explained, "in emergency circumstances, a child may be taken into custody by a responsible State official without court authorization or parental consent." *Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir. 2012) (internal quotation marks omitted). Such a state official is entitled to qualified immunity from actions under 42 U.S.C. § 1983 "unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Where the law is clearly established, "a caseworker is . . . entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Southerland*, 680 F.3d at 141

---

[3] Specifically, plaintiffs contend that the District Court (1) failed to consider relevant and admissible expert testimony; (2) incorrectly applied the standard for qualified immunity; and (3) failed to construe the evidence in a light favorable to plaintiffs in deciding disputed issues of fact. Appellant Br. at 1.

(internal quotation marks omitted); *accord Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Although this inquiry is known as the "objective reasonableness test," *see Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995), qualified immunity does not require application of a single "reasonable person" standard as that concept is understood in the law of torts.[4] Rather, qualified immunity shields from liability state officials tasked with choosing between interrupting parental custody or risking injury to the child "provided that there is an objectively reasonable basis for their decision, *whichever way they make it*." *Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (emphasis added).

After reviewing the record *de novo*, we agree with the District Court that the defendants are entitled to qualified immunity. In the circumstances presented here, it was "objectively reasonable"—within the meaning of the law of qualified immunity—for the defendants to believe "that there was an immediate threat to the safety of the Doe Children and a risk that the Doe Children would be left bereft of care and supervision." *Doe*, 2012 WL 4056723, at *5; *see also id.* ("Given the record before the Court as to the history

---

[4] The law of torts anticipates a uniform "standard to which the defendant's conduct must conform in order that he shall escape liability for harm done. . . ." Restatement (Second) of Torts § 285 cmt. a. (1965). In the context of qualified immunity, however, a test permitting of a single, objectively-reasonable standard of conduct is irreconcilable with the Supreme Court's recognition that an officer may be shielded from liability even if his actions involve errors in judgment. *See Pearson*, 555 U.S. at 231 ("The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." (internal quotation marks omitted)); *Malley*, 475 U.S. at 341 ("As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

between Jane Doe and Richard Roe, *at a bare minimum*, DCF officers of reasonable competence could disagree on the legality of defendants' decision . . . ." (emphasis in original)).

At the time of removal, the defendants were aware of the contentious history between Roe and Doe. Doe had been the subject of multiple physical assaults at the hands of Roe, at least one of which occurred while the children were in the home. DCF "Service Agreements/Safety Plans" had been in place requiring Doe to contact the police if Roe attempted to enter her home. The Superior Court had issued a Protective Order prohibiting Roe from entering Doe's home, which remained in place. Once at Doe's home, the defendants learned that Roe had violated the Protective Order, which Doe was either unwilling or unable to prevent. Because Roe had fled the property, leaving his car, shirt, and shoes behind, he was likely to return, but Whelan could not know when he would do so. Given the history of domestic violence, with which Whelan was familiar, and Roe's presence in the home late at night, it was objectively reasonable to believe that the children were in immediate danger.[5]

The reasonableness of the officers' conclusion is bolstered by the subsequent findings of two judges of the Superior Court that the children were in "immediate physical danger [from their] surroundings and that continuation in their home [wa]s contrary to their welfare." *Id.* at *7 (internal quotation marks omitted). These findings were based on the same information possessed by the defendants at the time of removal and, in one case, followed two days of evidentiary hearings on that information. *Cf. Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007) (noting the well-established rule

---

[5] These events are undisputed.

that "an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable").

In support of their argument, plaintiffs refer us to *Southerland v. City of New York*, which denied summary judgment based on qualified immunity for an officer's removal of children from their home without a court order. *See Southerland*, 680 F.3d at 157-61. But the instant case differs in two important ways. First, *Southerland* involved significant factual disputes regarding, *inter alia*, what the removing officer knew about the children's history and what the officer witnessed regarding the conditions of the home. *See id.* at 133-36. Such disputes are not present here. Second, the *Southerland* Court agreed with the District Court's conclusion that the defendants had not established the existence of exigent circumstances. *See id.* at 149.[6] In contrast, the District Court in this case analyzed the availability of qualified immunity under the clearly established "exigent circumstances" inquiry and found, based on the undisputed facts as set forth above, that a reasonable officer could conclude that the children were in imminent danger. We agree.

Finally, the District Court's failure to consider the Expert Report of Evan Stark, Ph.D., (the "Stark Report")[7] does not render

---

[6] The Court held that summary judgment was improper because it could not "conclude *as a matter of law on the current record* that it would have been objectively reasonable for [the state officer] to believe that his actions did not violate the Children's constitutional right not to be removed from their home *barring exigent circumstances*. . . ." *Southerland*, 680 F.3d at 161 (emphasis added).

[7] Dr. Stark holds, among other degrees, a Ph.D. in sociology, and is currently an Associate Professor at the School of Public Affairs and Administration and Director of the Masters in Public Health Program at Rutgers University-Newark, as well as the Chair of the Department of Urban Health Administration at the University of Medicine and Dentistry of New Jersey School of Public Health. **JA93, 116; http://urwebsrv.rutgers.edu/experts/index.php? a=display&f=expert&id=1289.**

inappropriate the entry of summary judgment. Even assuming that Dr. Stark's testimony was admissible at trial—a matter of some doubt[8]—when contrasted with the views of the defendants and two judges, all of whom concluded that there was an imminent threat of harm to the children, the Stark Report confirms, at most, that officers of reasonable competence could disagree on whether immediate removal was necessary. Qualified immunity protects officers under such circumstances.

In sum, notwithstanding the evidence plaintiffs claim the District Court overlooked or misconstrued, we readily conclude that the defendants are entitled to qualified immunity here.

## CONCLUSION

To summarize, we hold that:

(1) A state official who takes a child into custody without parental consent or court order is entitled to qualified immunity if there was an objectively reasonable basis to believe that there was an imminent threat of harm to the child.

(2) Based upon the evidence in the record—including the history of domestic violence between Roe and Doe, the violation of

---

[8] "A submission in opposition to (or in support of) summary judgment need be considered only to the extent that it would have been admissible at trial." *Garcia v. Hartford Police Dept.*, 706 F.3d 120, 127 (2d Cir. 2013); *see also Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (noting that we review summary-judgment-related evidentiary rulings for "manifest error"). We are skeptical that many of Dr. Stark's conclusions would have been admissible, inasmuch as they appear to be conclusory and overly general, *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008), although it would have been preferable for the District Court to state explicitly its reasons for disregarding this report.

the protective order, and the Superior Court's finding that the children were in immediate physical danger—the defendants' decision to take the Doe Children into state custody was objectively reasonable.

For the reasons stated above, we **AFFIRM** the September 14, 2012 judgment of the District Court granting summary judgment to the defendants.