14-2754-cv
Baez v. JetBlue Airways Corp.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: June 15, 2015      Decided: July 16, 2015)

Docket No. 14-2754-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ROSALINDA BAEZ,

Plaintiff-Appellant,

- v.-

JETBLUE AIRWAYS CORPORATION,
TIFFANY MALABET,

Defendants-Appellees.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Before:            JACOBS, RAGGI, and LYNCH, Circuit Judges.

Plaintiff Rosalinda Baez appeals from the judgment of the United States

District Court for the Eastern District of New York (Vitaliano, J.), granting

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

summary judgment in favor of defendants JetBlue Airways Corporation and

Tiffany Malabet on Baez's claims of negligence, defamation, false arrest, and

intentional infliction of emotional distress. Because defendants are immune from

liability under the Aviation and Transportation Security Act, 49 U.S.C. § 44941,

we affirm.

JON L. NORINSBERG, New York, New York, for Appellant Rosalinda Baez.

ROBERT J. BURNS (with Christopher G. Kelly and Sarah G. Passeri on the brief), Holland & Knight LLP, New York, New York, for Appellee JetBlue Airways Corporation.

GEORGE S. KOLBE, Raven & Kolbe, LLP, New York, New York, for Appellee Tiffany Malabet.

DENNIS JACOBS, Circuit Judge:

Plaintiff Rosalinda Baez brought claims against defendants JetBlue

Airways Corporation ("JetBlue") and its former employee, Tiffany Malabet

("Malabet"), arising out of an encounter at John F. Kennedy Airport ("JFK

Airport"), in which Baez was reported by Malabet for making an alleged bomb

2

threat and was then arrested by the Federal Bureau of Investigation ("FBI"). Baez arrived at the gate after the boarding door was closed; her checked luggage was already on board. Apparently unhappy about this state of affairs, Baez made statements, or raised questions, about the possibility of a bomb in her luggage. Malabet, who was working at the gate, acted on this information by reporting it. As law enforcement officers eventually determined after the flight was rerouted and the plane searched, there was no bomb on board.

Baez asserted claims under both federal and state law against JetBlue and Malabet, including (at issue on this appeal) negligence and defamation claims against JetBlue, and claims of false arrest, intentional infliction of emotional distress, and defamation against Malabet. The district court dismissed the case on summary judgment on the ground that defendants are immune from liability under the Aviation and Transportation Security Act, 49 U.S.C. § 44941 ("ATSA"). The court ruled in the alternative that Baez's claims lacked merit.

Baez appealed, arguing: that a jury should decide whether Malabet's statements relaying what Baez had said were materially false and therefore outside the protection of the ATSA; that the district court erred in concluding Malabet's statements were materially true; and that Malabet is not entitled to

3

immunity because she made the report at issue to her JetBlue supervisor, rather than to the Transportation Security Administration ("TSA") or other law enforcement officers.

There is no dispute about the salient fact in this case: Baez made reference to an arguably hypothetical bomb in her luggage, which had made it onto the JetBlue plane that she missed. We conclude that no reasonable jury could have found Malabet's statements relaying that reference to be materially false, and that the report she made, first to her supervisor, and subsequently to law enforcement officials, is covered by the ATSA. Accordingly, summary judgment in favor of defendants was correct on the ground that defendants are entitled to immunity.[2] Affirmed.

**BACKGROUND**

Baez arrived at JFK Airport at about 6:20 in the morning, and checked in at the JetBlue counter for her 8:05 flight to Austin. Am. Compl. ¶¶ 11-12. She did not, however, appear at her gate until minutes prior to the flight's scheduled

---

[2] In light of our conclusion that defendants are entitled to immunity from liability under the ATSA, we do not reach the district court's alternative holding that Baez's claims, in any event, lacked merit.

4

departure. As Baez approached the gate, Malabet told her that she had just closed the plane's door and that Baez would not be permitted to board. Id. ¶ 19.

Baez, upset by this turn of events, asked Malabet about her checked luggage. According to Baez, Malabet informed her that her luggage would remain on the plane and she would be able to retrieve it in Austin when she got there on a later flight. Id. ¶¶ 23-24. By Baez's own account, Baez then made cryptic reference to the possibility of a bomb in her luggage: "Isn't it a security risk to let a bag go on a plane without a passenger, what if there was a bomb in the bag?" Id. ¶ 25. Baez alleged that Malabet responded: "TSA agents would know if there was a bomb in the bag"; and Baez retorted "TSA--my ass" and walked away. Id. ¶¶ 26, 31.

Malabet relayed her conversation with Baez to her supervisor. J.A. 97-98. According to Baez, Malabet purposely misrepresented the relevant conversation in making her internal report, and conveyed that "Baez had stated that [she had] a bomb in [her] bag" and asked: "[S]o are you guys going to turn the plane around 'cause I need my bag?" Am. Compl. ¶ 41. Baez alleged that Malabet falsely attributed to Baez the observation that the TSA did not know how to do its job, and would not catch a bomb on board a plane. Id. ¶ 42. According to

5

Malabet, she did not personally regard Baez as a security risk, and reported only that Baez implied that she had a bomb in her bag by posing the question, what if there was a bomb in my bag?[3] J.A. 98-98.1, 102.

Malabet's supervisor advised her that JetBlue security personnel would be contacted, as well as the TSA. Id. at 97-98. An FBI agent interviewed Malabet while security officers were locating Baez. Id. at 942-43.

JetBlue security personnel located and detained Baez. Am. Compl. ¶ 46. Baez was then questioned at length by law enforcement agents. J.A. 60. The criminal complaint later filed by an FBI agent reported that Baez asked Malabet, "What if I had a bomb in my bag?," and that when Malabet replied that the "TSA would have detected it," Baez stated that she did have a bomb in her bag.

---

[3] Because Baez appeals from an award of summary judgment, we also consider the versions of Baez's statements and Malabet's report as reflected in the record evidence. For example, Baez testified in deposition as follows. Baez said: "So you're telling me that you're gonna let a bag go checked to a passenger and you--that's not a security risk? What if there's a bomb in the bag?" J.A. 43. Malabet responded: "If there was a bomb, the TSA would catch it"; and Baez replied: "TSA, my ass." Id. The FBI report indicates that Malabet relayed Baez's words as follows: "Well, I have a bomb in my bag so are you guys going to turn the plane around 'cause I need my bag?" and "TSA does not know how to do their f***ing job because if it did TSA would not catch it and let it go through!" Id. at 314.

6

As a security measure, JetBlue personnel and law enforcement officials decided to reroute the plane carrying Baez's luggage. Id. at 299. When the plane landed and its passengers were removed, security officers searched all the checked luggage and found no bomb; they did find marijuana residue in Baez's bag. Id.

Baez was charged with making a false bomb threat. 49 U.S.C. § 46507(1). Ultimately, the government dropped the bomb threat charge, and Baez pleaded guilty to misdemeanor drug charges based on the marijuana found in her luggage. Baez was sentenced to three years' probation and ordered to pay restitution to JetBlue for the cost of rerouting the plane. (Because she violated the terms of her probation by failing a drug test, and refused to attend a drug treatment program, Baez ultimately served a 30-day prison sentence. J.A. 714-15.)

Baez's arrest garnered some media attention. When she lost her job, she "suspected this was as a result of the JetBlue matter." Id. at 28. Baez brought a host of claims against defendants, some of which were previously dismissed. The claims that survived defendants' motions to dismiss were for negligent supervision, retention, training, and hiring; defamation; false arrest; and

7

intentional infliction of emotional distress.  See Baez v. JetBlue Airways, 745 F.

Supp. 2d 214 (E.D.N.Y. 2010).  The district court later granted summary judgment

to JetBlue and Malabet on the ground that the ATSA affords them immunity

from suit.

**DISCUSSION**

Summary judgment is appropriate when, having resolved all ambiguities

and permissible factual inferences in favor of the party against whom summary

judgment is sought, there are no genuine issues of material fact in dispute and

the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); see

also Doe v. Whelan, 732 F.3d 151, 154-55 (2d Cir. 2013).  "A genuine issue of

material fact exists if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  Savino v. City of N.Y., 331 F.3d 63, 71 (2d Cir.

2003) (internal quotation marks omitted).  We review de novo the district court's

grant of summary judgment in favor of defendants.  Nat'l R.R. Passenger Corp. v.

McDonald, 779 F.3d 97, 100 (2d Cir. 2015).

## I

In enacting the ATSA, Congress sought "to ensure that air carriers and their employees would not hesitate to provide the TSA with the information it needed" to respond to potential threats. Air Wis. Airlines Corp. v. Hoeper, 134 S. Ct. 852, 862 (2014). Accordingly, the statute provides:

> Any air carrier or . . . employee of an air carrier . . . who makes a voluntary disclosure of any suspicious transaction relevant to a possible violation of law or regulation, relating to air piracy, a threat to aircraft or passenger safety, or terrorism, . . . to any employee or agent of the Department of Transportation, the Department of Justice, any Federal, State, or local law enforcement officer, or any airport or airline security officer shall not be civilly liable to any person under any law or regulation of the United States, any constitution, law, or regulation of any State or political subdivision of any State, for such disclosure.

49 U.S.C. § 44941(a). The ATSA excepts from this broad grant of immunity disclosures made "with actual knowledge" that the statements were "false, inaccurate, or misleading" or "with reckless disregard as to the[ir] truth or falsity." Id. § 44941(b).

The Supreme Court has held that an air carrier (such as JetBlue) and an airline employee (such as Malabet) are immune from liability for the type of

9

report made here unless the report was *materially* false. See Hoeper, 134 S. Ct. at 862. In this context, "a materially false statement is one that would have a different effect on the mind of the . . . listener from that which the truth would have produced." Id. at 863 (internal quotation marks and alterations omitted). The "listener" is a reasonable security officer. Id. at 864. Specifically, "we care whether a falsehood affects the authorities' perception of and response to a given threat." Id. at 863.

## II

Baez argues that the district court erred in deciding the question of materiality for ATSA purposes at the summary judgment stage because such a determination is subject to fact questions for resolution by a jury. But Baez conflates two distinct materiality inquiries: whether there is a "genuine dispute as to any material fact," which would preclude summary judgment, Fed. R. Civ. P. 56(a); and whether the statements at issue are materially false for purposes of the ATSA. 49 U.S.C. § 44941(b)(1).

**A**

Not all factual disputes bar the grant of summary judgment. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). We accept, as we must, Baez's version of the facts. Nevertheless, we reject her contention that the district court erred in granting summary judgment, because we conclude that "the facts and the law will reasonably support only one conclusion" on which "reasonable persons" could not differ. McDermott Int'l, Inc. v. Willander, 498 U.S. 337, 356 (1991); cf. Hoeper, 134 S. Ct. at 864 ("[W]e conclude that even if a jury were to find the historical facts in the manner most favorable to Hoeper, Air Wisconsin is entitled to ATSA immunity as a matter of law."). Resolution of the immunity issue at this stage is also consistent with the Supreme Court's "repeated[]" admonition to "resolv[e] immunity questions at the earliest possible" point in the litigation. Hunter v. Bryant, 502 U.S. 224, 227 (1991).

**B**

There are differences between the statements Baez concedes she made and the statements she alleges Malabet reported to law enforcement officials.

11

However, the differences are "immaterial" for purposes of ATSA immunity.

Hoeper, 134 S. Ct. at 865. Baez claims she raised only a hypothetical question about the security risk posed by a checked bag unaccompanied by its owner, which might contain a bomb. But since Baez's luggage was indisputably a checked bag unaccompanied by its owner, "a reasonable [law enforcement] officer . . . would have wanted to investigate." Id.; cf. United States v. Gonzalez, 492 F.3d 1031, 1038 (9th Cir. 2007) (concluding sentencing enhancement based on making a bomb threat was warranted whether or not threat was "couched in terms of 'do I have to say I have a bomb?' or 'I'm blowing the plane up, I'm taking it down'").

"[T]o accept [Baez's] demand" that an airline employee relay the "precise wording" of a potential security threat "would vitiate the purpose of ATSA immunity." Hoeper, 134 S. Ct. at 865. At an airport, a bare reference to a bomb may be enough to set off the chain of events that resulted in Baez's detention, interrogation, and arrest by the FBI. See id. ("Baggage handlers, flight attendants, gate agents, and other airline employees who report suspicious behavior to the TSA should not face financial ruin if, in the heat of a potential threat, they fail to choose their words with exacting care."). A gate agent or

12

airline manager may not confidently distinguish between a veiled threat and a comment expressing genuine concerns about security. That is why, once a report is made, it is for the TSA and other law enforcement officers "to determine and execute a response." Id. at 864; see 49 U.S.C. § 114(f)(2) (stating that it is the role of the TSA to "assess threats to transportation"); see also Barker v. Transp. Sec. Admin., 353 F. App'x 450, 451-53 (1st Cir. 2009) (unpublished disposition) (discussing TSA's issuance of warning letter to passenger who made reference to a bomb in his bag but subsequently tried to retract statement). Thus a reasonable officer would necessarily have followed up on the statements Baez admitted she made. And once the agents followed up, the choice of response was in their hands based on their evaluation of the evidence.

The "substance," or "gist," Hoeper, 134 S. Ct. at 861 (internal quotation marks omitted), of Baez's statements are pleaded in her complaint: she raised questions about a bomb and disparaged the effectiveness of the TSA. Had JetBlue reacted otherwise, it might have been in violation of its obligation to report potential threats, and could have been subject to civil penalties. See 49 U.S.C. §§ 44905(a), 46301(a)(1)(A).

To support her contention that a reasonable juror could have seen things her way, Baez invokes Malabet's statement (in her deposition) that she did not regard Baez as a real security threat. But the ATSA materiality inquiry must be undertaken from the perspective of a reasonable security officer. Malabet's report may have been accurate or inaccurate, but even a "falsehood cannot be material, for purposes of ATSA immunity, absent a substantial likelihood that a reasonable security officer would consider it important in determining a response to the supposed threat." Hoeper, 134 S. Ct. at 864. The FBI report, which includes the hypothetical formulation of Baez's comments, makes it clear that the security officials took them seriously, even if Malabet did not. A determination was made that the plane carrying Baez's luggage should be diverted, grounded, and searched, and agents of the FBI deemed it prudent to detain and question Baez over the course of several hours.

In any event, "[t]his standard is an objective one, involving the hypothetical significance of an omitted or misrepresented fact to a reasonable security official, rather than the actual significance of that fact to a particular security official." Id. (internal quotation marks and alteration omitted). Any reasonable security officer would follow up on a report of a disgruntled

14

passenger who adverted to a bomb in luggage and deprecated the agency responsible for detecting such bombs.

As other courts have held, "the use of ambiguous language does not preclude a statement from being a threat," and a "bad joke can fall within the scope of [§ 46507(1)]." United States v. Cothran, 286 F.3d 173, 175-76 (3d Cir. 2002) (internal alterations and quotation marks omitted) (citing cases). Against this backdrop, and the Supreme Court's holding that "ATSA immunity may not be denied under § 44941(b) to materially true statements," Hoeper, 134 S. Ct. at 862, we agree with the district court that a passenger who speculates aloud about whether there is a bomb in her luggage cannot be heard to complain when an airline representative reports the use of those words, even if the passenger's precise words are misrepresented. Indeed, the TSA's policy "known as 'when in doubt, report,'" id. at 867, would be defeated if air carriers and their employees were exposed to liability for reporting a statement that references a bomb in luggage.

## III

Baez argues that Malabet should be stripped of immunity because, in essence, she made her initial report to the wrong person: her supervisor, rather than a law enforcement official. We disagree. Malabet's report to her supervisor was the first step in a chain of events that led to "a voluntary disclosure" of a possible threat to law enforcement personnel. 49 U.S.C. § 44941(a).

Malabet was interviewed by the FBI before that agency made any arrest or charging decisions with respect to Baez and Baez alleges that the FBI acted on Malabet's misstatements. It was thus the report to law enforcement, as defined by § 44941(a), that led to Baez's detention, interrogation, and arrest. Similarly, the report in <u>Hoeper</u> made its way through channels at Air Wisconsin before airline management made a report to the TSA. <u>Hoeper</u>, 134 S. Ct. at 858-59.

\* \* \*

Malabet and JetBlue are required to report "threat[s] to civil aviation" to law enforcement officials. <u>See</u> 49 U.S.C. § 44905(a). Judgment calls about how to act on such reports are the province of the TSA and other law enforcement officers. Here, adverse consequences to Baez flowed from the decisions made by

16

such law enforcement officers.  See Id. § 114(f)(7) (stating the TSA shall "enforce security-related regulations and requirements").

Because it is undisputed that Malabet and JetBlue were aware of ominous (even if ambiguous) references to a bomb on a flight, no reasonable jury could find that differences in wording between Baez's account and Malabet's constituted materially false statements made to law enforcement.  Id. § 44941(b)(1).  Accordingly, Malabet and JetBlue are entitled to ATSA immunity, and the grant of such immunity serves the statute's goals of encouraging reporting, while denying immunity to "bad actors."  Hoeper, 134 S. Ct. at 862 (internal quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the district court.

17